## KATHERINE L. WILLIAMSON v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division Two, March 19, 1907.

1. **JUROR: Special Service Within a Year.** Section 6547, R. S. 1899, providing that a juror who has served on any jury in any court of this State within twelve months next preceding must be excused if challenged for that cause by either party, applies to special juries in cities of over one hundred thousand inhabitants. It applies to all juries in such cities. And it does not mean the preceding calendar year; it means within twelve calendar months next preceding the *voir dire*—just what it says.

2. ———: ———: **Non-Prejudicial: Disagreeing to Verdict.** Where the juror, who was challenged on the ground that he had within twelve months served as a juror, disagreed to the verdict rendered by nine of the jury against appellant, the error in overruling the challenge and retaining him was non-prejudicial, and the judgment will not be reversed on that account. Had the juror so challenged been one of the nine who made the verdict, the error might be prejudicial and materially affect the merits of the action.

3. **ELECTRIC CARS: Explosions in Controller Boxes: Knowledge.** The evidence in this case, in which plaintiff sues for damages caused by an explosion in the controller box of an electric street car on the front platform of which she was riding and from which she jumped and was injured, shows that defendant had previous knowledge of explosions similar to the one which occurred at the time plaintiff was hurt, and therefore an instruction authorizing the jury to find the existence of such knowledge was not without evidence on which to base it.

4. ———: ———: ———: **Flame and Noise.** Defendant having had knowledge of prior explosions similar to the one which attended plaintiff's injuries, must be held to have known that explosions in the controller box were attended by such noise and flame as would imperil, excite and frighten passengers on the front platform of defendant's car.

5. ———: ———: ———: **Peril to Passengers: Knowledge.** It is not necessary that the evidence show that some passenger had been imperiled, excited or frightened by reason of prior similar explosions. Common knowledge teaches that an explosion in the controller box of an electric car would tend to frighten and imperil the safety of passengers on the front platform where the controller was. This conclusion is supported in this case by the fact that the motorman in charge of the car jumped from the car when the explosion occurred and the flames shot out.

6. ———: **Riding on Front Platform: Contributory Negligence: Instruction.** A passenger is not guilty of negligence in riding on the front platform of a crowded electric street car or in sitting on the sand box; and where no evidence shows that her knowledge and experience regarding the operation of electric cars, or dangers incident to riding on the front platform and sitting on the sand box, were such as to give her any ground for apprehending any danger from the position she occupied, it is not error to omit from her instructions the affirmative defense of contributory negligence due to her riding on the front platform or sitting on the sand box.

7. **CONTRIBUTORY NEGLIGENCE: Non Direction.** An instruction for plaintiff which does not present the affirmative defense of contributory negligence is no more than non-direction; it is not mis-direction, and hence not error in a civil case. If defendant wishes to have the jury determine whether plaintiff's action in riding on the front platform and sitting on the sand box there, was contributory negligence, defendant should ask an instruction to that effect.

8. **ELECTRIC CAR: Riding on Front Platform: Negligence: Inspection.** It is not error to modify defendant's instruction in reference to the inspection of its cars and reasonably anticipated explosions, by words which submit the question of defendant's negligence in permitting plaintiff to ride on the front platform where the explosion occurred.

9. ———: ———: **Jumping From Car.** It is just as culpable to negligently frighten a passenger and thereby cause him to jump from the car and injure himself, as it is to injure him directly. And this is true, although no injury would have resulted had no attempt to escape been made.

10. ——: ——: ——: **This Case.** Plaintiff, a young woman 28 years old, boarded a crowded electric street car, and took a position on the front platform and sat on the sand box. An explosion occurred in the controller box, the flames shooting out and filling the vestibule. The motorman jumped from the moving car, and plaintiff first tried to enter the interior of the car, but being hindered jumped from the car and was injured in the fall. The evidence showed like explosions had previously occurred on defendant's cars, but also showed defendant had exercised a high degree of care in inspecting the car and the controller box, and that so far as known it was not defective. *Held*, that it was for the jury to determine whether defendant was negligent in permitting her to ride on the front platform and in not warning her of the dangerous position she occupied, and in not providing her a seat within the car, and a verdict for her, the instructions being approved, is permitted to stand.

11. ——: **Demurrer: When Given.** A peremptory instruction to find for defendant should never be given where the facts bearing on the issues are disputed, or are undisputed but admit of different conclusions or inferences, or upon which reasonable minds might differ.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Blevins,* Judge.

AFFIRMED.

*Boyle & Priest* and *Edward T. Miller* for appellant.

(1) The court erred in overruling defendant's challenge for cause to the juror Gustav Schoenberg, it being admitted that he had served as a juror within the twelve months next preceding the trial. Sec. 6547, R. S. 1899; Theobald v. Railroad, 191 Mo. 395; Barker v. Hine, 54 Ind. 542; City of Goshen v. England, 119 Ind. 368; Wiseman v. Bruns, 36 Neb. 467; Williams v. Grand Rapids, 53 Mich. 271; People v. Thacker, 108 Mich. 652; Bissell v. Ryan, 23 Ill. 566; Brooks v. Bruyn, 35 Ill. 392; Railroad v. Eaton, 136 Ill. 9; State v. Lowe, 56 Kan. 594; Railroad v. Snedeger, 5 Kan. App. 700; Courvoisier v. Raymond, 23 Colo. 113; Smith v. State,

102 Tenn. 721; 17 Am. and Eng. Ency. Law (2 Ed.), p. 1122. (2) The court erred in giving plaintiff's instruction 1. (a) Paragraph 1 is not supported by any evidence. O'Fallon v. Boismenu, 3 Mo. 405; Wilkerson v. Eilers, 114 Mo. 245. (b) The final paragraph of the instruction does not properly submit the issue as to plaintiff's negligence in voluntarily riding upon the platform of the car. Schroeder v. Michel, 98 Mo. 43; May v. Crawford, 150 Mo. 504; 1 Blashfield, Instructions to Juries, sec. 61. (3) The court erred in refusing defendant's instruction 1 as requested and in giving said instruction with amendments of its own motion. (a) The instruction as amended is erroneous. It made defendant an insurer of plaintiff's safety. Thompson v. Railroad, 140 Mo. 125; Amer. Brewing Assn. v. Talbot, 141 Mo. 674; Graney v. Railroad, 157 Mo. 666; Fuchs v. St. Louis, 167 Mo. 620; McFadden v. Railroad, 44 N. Y. 478; Readhead v. Railroad, L. R. 4 Q. B. 379; Ray on Negligence of Imposed Duties (Personal), pp. 133, 134; 2 Shear. & Redf., Negligence (5 Ed.). sec. 496. (b) The instruction is in irreconcilable conflict with plaintiff's instruction 1 and defendant's instruction 4. Livingston v. Railroad, 170 Mo. 452; Shepard v. Railroad, 189 Mo. 362. (4) The court erred in refusing defendant's requested instruction 5 and in giving the same of its own motion as amended. (a) The instruction as requested correctly declared that if previous explosions were not dangerous, then defendant was not negligent in permitting plaintiff to ride on the front platform. Thompson v. Railroad, 140 Mo. 125. (b) There is no evidence to support the court's amendment to the instruction, with respect to former explosions, frightening passengers and making them "likely to jump off such car while in motion." Instructions not supported by the evidence are erroneous. Wilkerson v. Eilers, 114 Mo. 245. (5) The court erred in refusing defendant's requested instruction 9. Defendant was not required to provide against an in-

jury that could not be reasonably anticipated. If it did its duty it was not negligent and the instruction so declared. Thompson v. Railroad, 140 Mo. 125; Fuchs v. St. Louis, 167 Mo. 620. (6) The court erred in refusing defendant's peremptory instruction "B" offered at the close of all the evidence. The record shows that plaintiff's injuries were not due to negligence on defendant's part, but to unavoidable accident. Thompson v. Railroad, 140 Mo. 125; Graney v. Railroad, 157 Mo. 666; Fuchs v. St. Louis, 167 Mo. 620.

*Jamison & Thomas* for respondent.

(1) There was no reversible error in the overruling of defendant's challenge of juror Gustav Schoenberg. (a) Gustav Schoenberg was a competent special juror in the city of St. Louis, and is not subject to qualifications provided in section 6547, Revised Statutes 1899. Secs. 6564, 6566, 6567, R. S. 1899; State ex rel. v. Withrow, 133 Mo. 500; State v. Faulkner, 175 Mo. 546; State v. Lehman, 175 Mo. 619. (b) Defendant could not have been harmed by permitting Gustav Schoenberg to remain on the jury, as he did not sign the verdict nor participate therein. Sec. 865, R. S. 1899; West v. Forest, 22 Mo. 344; O'Brien v. Vulcan Iron Works, 7 Mo. App. 257; Dieckman v. Young, 87 Mo. App. 530; Hensler v. Stix, 185 Mo. 238; Portwright v. Railroad, 183 Mo. 72; Smith v. Peacock (Ga.), 88 Am. St. Rep. 53. (2) It was incumbent upon defendant, as a common carrier, to use a very high degree of care in providing a safe place for carrying the plaintiff. Clark's Accident Law, Street Railways (2 Ed.), sec. 49; Fetter on Carriers of Passengers, secs. 38, 172; Nellis on Street Railroad Accident Law, sec. 24; Merwin v. Railroad, 1 N. Y. Supp. 267; Harrison v. Electric Light Co., 195 Mo. 606; Hoepper v. Southern Hotel Co., 142 Mo. 388. (3) The undisputed physical facts shown in the case at bar make out a prima facie case

of negligence. Nellis on Street Railroad Accident Law, p. 67; Clark's Accident Law, Street Railways (2 Ed.), sec. 50; Fetter on Carriers of Passengers, secs. 44, 480, 483, 490; Poulsen v. Railroad, 18 App. Div. (N. Y.) 221; 30 App. Div. (N. Y.) 246; Gilmore v. Railroad, 6 App. Div. (N. Y.) 117; Leonard v. Railroad, 57 App. Div. (N. Y.) 125; Buckbee v. Railroad, 64 App. Div. (N. Y.) 360; Redmond v. Railroad, 185 Mo. 1; Chadwick v. Railroad, 195 Mo. 517; Hipsley v. Railroad, 88 Mo. 348; Ryan v. Railroad, 190 Mo. 621; Dougherty v. Railroad, 9 Mo. App. 478, 81 Mo. 325; Yoemans v. Navigation Co., 44 Cal. 71; Spear v. Railroad, 119 Pa. St. 61; Och v. Railroad, 130 Mo. 27; Denver Tramway Co. v. Reid, 4 Colo. App. 53. (4) The sufficiency of defendant's precaution and inspection of its appliances were questions of fact to be determined by the jury under instructions of the court. Nellis on Street Railroad Accident Law, pp. 66, 69; Fetter on Carriers of Passengers, sec. 41; Palmer v. Canal Co., 120 N. Y. 170; Norris v. Railroad, 24 N. Y. Supp. 140. (5) It was not negligence on the part of plaintiff to enter upon or ride upon the front platform. (6) Plaintiff, in the face of apparent peril and danger, occasioned by defendant's negligence, was not required, in attempting to escape from such, to exercise the judgment and discretion which would be required of her when not dominated by terror or impending danger; and it was not negligence on her part to jump from said car to escape the real or apparent danger. Bishop v. Railroad, 121 Mo. 216; Kleiber v. Railroad, 107 Mo. 240; McManus v. Railroad, 116 Mo. App. 110; Ephlan v. Railroad, 137 Mo. 187; McPeak v. Railroad, 128 Mo. 617; Siegrist v. Aarot, 86 Mo. 200; Adams v. Railroad, 74 Mo. 553; Wesley City Coal Co. v. Healer, 84 Ill. 129; Twomley v. Railroad, 69 N. Y. 160; Beach on Contributory Negligence, p. 43; Whitaker Smith's Negligence, sec. 392; Jones v. Boyce, 1 Stark 493; 2 Sherman & Redfield on Negligence, sec. 474; Stokes v.

Salstonstall, 13 Peters 181. (7) Plaintiff's instruction 1 was supported by the evidence and properly submitted the issue to the jury, and there was no error in giving said instruction. (8) The court properly amended defendant's instruction 1. (9) The court properly amended defendant's instruction 5 and all of said instructions, as amended, were warranted by the evidence. (10) The court properly refused defendant's instruction 9, as all the defenses submitted thereby were covered by other instructions given by the court. (11) Under the law and evidence in the case, the issues involved were properly submitted to the jury and the court properly refused defendant's peremptory instruction "B."

BURGESS, J.—Plaintiff sues for ten thousand dollars damages for personal injuries sustained by her. The petition, after alleging that the defendant is and was a corporation duly organized under the laws of this State and engaged as a common carrier of passengers in the operation of a system of street railroads, with cars propelled by electricity, in the city of St. Louis, proceeds as follows:

"That on the 24th day of August, 1902, the defendant company, as such common carrier, was engaged in operating a double track system of street railroads, with cars propelled by electricity, on Delmar avenue, in said city. That on said day the plaintiff entered upon one of the cars of defendant company as a passenger at Forest Park, then and there ready and willing to pay her fare as such upon demand; that at the time of the entry of plaintiff upon said car of the defendant company all the seats and the entire interior thereof were crowded and occupied by passengers; that upon the invitation of defendant, plaintiff, together with other passengers, entered upon the front platform of said car, which was then and there open for the reception of all intended passengers, and

was by defendant's servants, in charge of said car, negligently invited and permitted to take a seat upon a certain box constituting a part of said car and set up and attached to the closed side of said front platform of said car, which position so taken by plaintiff (although plaintiff was at the time entirely ignorant thereof) was, owing to the dangerous motive power employed, and the proximity of the controller box and other appliances of said car, a hazardous position for passengers to occupy; that explosions were liable to occur in said controller box and other electrical appliances of said car, connected therewith (of which the plaintiff was at the time entirely ignorant), which would cause the plaintiff and other passengers riding upon said front platform to leap and jump therefrom to secure their and her safety. That after plaintiff had so entered upon said front platform, the said car was in charge of the servants and employees of the defendant and was by them being run over its tracks in an easterly direction on Delmar avenue. That the said car was being propelled by said defendant by the use of a dangerous propelling power, to-wit: electricity, and by the use of dangerous machinery and appliances located upon and adjacent to said front platform for the application of said power to the operation of said car. That said machinery for the propulsion of said car by electricity was negligently permitted to be and was defective, and that in consequence of the dangerous nature of said power and machinery, and in consequence of the defective condition of said machinery while said car was being so operated, the electricity in passing into and through the controller box and other appliances of said car on and adjacent to the front platform thereof, caused a sudden and violent explosion in said controller box and other appliances on and adjacent to said front platform, whereby flames of fire were suddenly caused to issue and did continuously issue out of the same, and extended over the whole of said front platform and

against this plaintiff, putting her in imminent, immediate and continuous peril of being burned, and she was burned upon her face by said flames and thereby seriously injured and suffered great pain from said burns. That upon the issuance of said flames out of said controller box and other appliances on and adjacent to said front platform of said car, the motorman in charge of said car—a servant and employee of said defendant company—immediately jumped and leaped from said car while the same was running in an easterly direction on Delmar avenue, and that plaintiff in consequence of being so suddenly put in peril by said explosion and the continuing flames, and in consequence of said desertion of the car by said motorman— being under the necessity of seeking refuge from said flames, and not being able to retreat therefrom into the interior of the car, owing to its crowded condition and the excitement of the passengers therein caused by said explosion, and not having the opportunity or time for reflection—did also jump and leap from said car to secure her safety, and in so leaping, while said car was still in motion along Delmar avenue just east of De Baliviere avenue, plaintiff was violently pitched and thrown to the ground. That in consequence of the plaintiff being so pitched and hurled to the ground, plaintiff was bruised and wounded upon her legs and shoulders, her right knee severely sprained, and her internal and pelvic organs were severely and permanently injured, and her uterus was retroverted and misplaced and her ovaries prolapsed and misplaced; that by reason of said injuries to her legs, her legs have become stiff and permanently injured and she has suffered and still suffers great bodily pain and injury therefrom. That by reason of the said retroversion and misplacement of her uterus and the prolapsus of her ovaries, and other injuries to her pelvic organs, the said plaintiff has suffered and still suffers great pain

202 Sup—23

in her back, groin and other portions of her body. That plaintiff's injuries, both internal and external, were and are great and permanent injuries, and the plaintiff has thereby become permanently injured and will never recover from the effects of said injuries, occasioned as aforesaid by the negligence of the defendant, its agents and employees. That, by reason of said injuries, the plaintiff was for many weeks confined in a hospital, and was and is rendered incapable of following her ordinary occupation, which is that of a milliner, and has suffered such permanent injuries as aforesaid that she will never again be able at any time to follow said avocation. That all of said injuries were caused, as aforesaid, by the negligence of said defendant, its employees and agents. That by reason of the said negligence of said defendant, its agents and employees, the said plaintiff has sustained damages in the sum of ten thousand dollars, for which sum the defendant is indebted to the said plaintiff."

Defendant's answer to the petition was, first, a general denial, and then a plea of contributory negligence, stating, "that plaintiff's injuries, if any, were caused by her own negligence, (1) in voluntarily riding on the front platform of a car; (2) in unnecessarily jumping from said front platform, where plaintiff was improperly riding, while said car was in motion."

The reply to said answer was a denial of each and every allegation and statement set forth and contained therein.

On the application of the defendant, the court ordered a special jury impaneled to try said cause, from which said special venire the following jurors were selected and sworn to try said cause: John Samson, Jr., Gustav Schoenberg, Philip J. Schuck, Otto J. Schulz, Phillip Siebel, Llewellyn B. Schultz, Adolph Singer, Henry S. Kaer, Arthur S. Tucker, Thomas M. Tulley, John C. Tumbach, Adolph L. Lehman.

The trial was commenced on April 21, 1904, and

resulted in a verdict, by nine of the jurors, in favor of plaintiff, for the sum of seven thousand five hundred dollars, upon which verdict judgment was rendered.

Gustav Schoenberg was not one of the nine jurors who rendered the verdict, but during the *voir dire* examination of the veniremen he stated that he had served on a jury in the circuit court of St. Louis City within the twelve months next preceding the trial. Defendant challenged the juror for cause, but the court overruled the challenge, stating that the statute disqualifying jurors for that cause relates to jurors who have served on a jury since the last preceding October term of court. Defendant excepted to the ruling of the court.

Within four days after verdict the defendant filed motions for new trial and in arrest, which were overruled, and defendant appealed.

The facts are substantially as follows:

At the time of plaintiff's injury she was a millinery trimmer, twenty-eight years of age, with Nashville, Tennessee, as her headquarters. She had been coming to St. Louis, in the course of her business, twice a year for several years preceding the accident, remaining two or three weeks each time, and during all of these visits frequently rode on electric street cars.

On Sunday afternoon, August 24, 1902, plaintiff, in company with Miss Una Mount, and other acquaintances, went to Forest Park in the city of St. Louis, and they started back into the city between four and five o'clock in the afternoon. They went to the Lindell Pavilion in the park, and as there was a great crowd returning on the cars were unable to find room in any of them until two or three had passed. When they did attempt to enter the car on which they became passengers, plaintiff and Miss Mount had gotten separated

.from the rest of their party. Miss Mount testified
that she and plaintiff entered the car at the rear plat-
form, and finding no vacant seats walked through the
aisle of the car to the front platform and sat on the
sand box immediately at the right of the motorman.
Plaintiff, however, testified that she and Miss Mount
did not enter at the rear platform and walk through
the car, but that they both entered by way of the front
platform.

After plaintiff and Miss Mount had been seated
on the sand box, a party consisting of Mrs. Lou Steph-
ens and her two children, her niece and her two chil-
dren, entered the car by the front platform. At that
time there were two or three persons on the front plat-
form, including plaintiff and Miss Mount, and seven
to ten people had gotten inside the car just ahead of
the Stephens party. When they got on the front
platform the interior of the car was crowded, and Mrs.
Stephens remained on the front platform, her two chil-
dren stood on the step, and one of the party stood
inside the car. No one entered after this by the front
platform.

When plaintiff and Miss Mount entered the front
platform the motorman was sitting at his post, and
the two young ladies finding no one on the sand box
walked behind the motorman and took the vacant seat,
Miss Mount sitting nearer the controller box than did
plaintiff. No one directed them to sit there and
neither the motorman nor the conductor said a word to
them at any time before the accident. When the acci-
dent occurred, the conductor had gotten to plaintiff to
collect her fare.

Plaintiff testified that she did not know what she
was sitting on, but knew that the car was propelled by
electricity, and that she was sitting right by the con-
troller box which was used by the motorman in oper-
ating the car. The car started northwardly on De
Baliviere avenue, ran as far as Delmar avenue and

then turned east on the latter street. After making this curve, and having run along smoothly on Delmar avenue quite a distance at from seven to ten miles an hour, the accident occurred.

Several witnesses testifying on behalf of plaintiff, described the occurrence as an explosion in the controller box followed by sharp reports, causing flames to shoot from the controller box throughout the front platform. Most of the passengers became excited and many of them left the car, probably as many as twenty remaining until after quiet had been restored. Plaintiff and Miss Mount jumped from the sand box and tried to get into the car, but Miss Mount fell on the front platform and obstructed plaintiff's passage. Plaintiff stood on the platform by the controller box a short time waiting for Miss Mount to get up and go inside the car, but as she did not plaintiff again attempted to enter the car but got her foot entangled in Miss Mount's dress. She then stood there a second and as she saw the motorman jump from the car she became frightened and followed him, and in striking the ground fell and was injured. While plaintiff was standing on the platform she was not in reach of the flame but was burned by its heat. The car was taken back to the car sheds at De Baliviere and Delmar avenues and the passengers were transferred to another car. Plaintiff was assisted on the latter car, was taken to the office of Dr. Brokaw, the company's chief surgeon, was there treated temporarily for her injuries, and was afterwards removed to St. John's Hospital, remaining there under treatment about two months.

While at the hospital plaintiff suffered constantly with her knee, back, back of her head and back of her neck. Her knee was stiff and she was unable to use it at all, and when she left the hospital her back was stooped, her knee was still bandaged, and she could not walk without assistance. She was also very nervous and could not sleep well. From the hospital she

was taken to Nashville, Tennessee, remaining there until December, and during all that time suffered intensely from the injuries above enumerated. From Nashville she went to Huntsville, Alabama, remaining there until February when she returned to Nashville, leaving the latter place in July for Fort Worth, Texas. During all of that period her suffering continued and she is still suffering from the same injuries.

Physicians who treated her and others who examined her for the purpose of testifying stated that she had sustained severe injuries to her female organs, particularly the uterus and ovaries, and that in all probability these injuries were permanent.

On behalf of defendant, the motorman running the car testified that the car was a Delmar avenue car No. 1797. That as he was going east on Delmar avenue, about one hundred feet east of De Baliviere avenue, and when the power had been applied to the seventh notch of the controller, the controller blew up, making a great display of fire and smoke and a loud report. Several passengers jumped from the car and the motorman stopped it as soon as he could. He did not notice anything wrong about the controller and had no trouble with it at all.

William Huxley, controller inspector for the defendant at the De Baliviere and Delmar avenue sheds, testified that in the line of his duties on August 20th, four days before the accident, he had made a thorough examination of the controller of this car and all the electrical appliances connected with the car and found them in good condition.

By William Hand, superintendent of construction for the General Electric Company, William O. Mundy, supervisor of defendant's electrical department, and G. J. Smith, a master mechanic having charge of the electrical work of two street railways for twelve and one half years, defendant proved that the controller and other electrical equipment used on

this car were made by the General Electric Company, and were the same kind that were used on all the principal street railways of this country. The electrical equipment of the car in question was the best known to the electrical profession. All of these appliances were described in detail, together with the manner of their operation, by these witnesses. They explained that there is no such thing as an explosion in the controller box, but that the occurrence narrated by plaintiff's witnesses was only a "short circuit" or the coming together of two electric conductors having a difference of potentiality. A "short circuit" cannot possibly be prevented, and in order that the effect of the excessive flow of electricity may be minimized a circuit breaker and fuse are used. These are burned out and melted, opening the circuit and preventing the electricity from continuing to enter the controller box. Both the circuit breaker and the fuse with which this car was equipped are safety devices and are the best known. The circuit breaker and fuse, however, do not operate except when there has been a "short circuit" in the controller. From the latter the reflection of the arc, caused by the "short circuit" therein, comes through the seam at the top of the brass controller case. The flame cannot possibly get out of the controller and it would not harm anyone to sit on the controller box while the electric disturbance is taking place. It is a well-known fact that these disturbances occur in controller boxes and there is absolutely no way to prevent them. These witnesses further testified that these disturbances may occur in a controller in an absolutely perfect condition and on a car equipped with entirely new appliances.

Over the objections and exceptions of defendant, the court, at the instance of the plaintiff, gave the following two instructions:

"1. The court instructs the jury that if they believe from the evidence that prior to the 24th day of

August, 1902, explosions in the controller boxes used by defendant on its cars in St. Louis were of frequent occurrence, and that such explosions were attended by such noise and flame as would imperil, excite and frighten passengers on the front platform and near the controller boxes on defendant's cars, and that the occurrences and probability of such explosions and the danger to passengers on the front platform near to such controller boxes by reason of such explosions were known to the defendant and its agents operating its said cars, and were not known to the plaintiff; and if the jury further believe from the evidence that on the said 24th day of August, 1902, plaintiff boarded one of defendant's Delmar avenue cars with the intention of becoming a passenger thereon and paying her fare as such passenger when she might be called upon so to do by the conductor of said car; and if the jury further believe from the evidence that plaintiff upon boarding said car found said car crowded with passengers, and that she thereupon, with the knowledge or consent of defendant's motorman or conductor in charge of said car, and in ignorance of the fact that explosions in the controller box on said car might occur with a loud report, causing flames to leap out therefrom, took a seat on the sand box on the front platform of said car and within a few feet of the controller box on said car, and was permitted by the employees of defendant in charge of its said car to occupy said position while said car was in motion; and if the jury further believe from the evidence that the agents and servants of the defendant in charge of its said car were negligent in allowing plaintiff to occupy a position on such front platform of said car close to the controller box—that is, if the said agents and servants of the defendant in charge of its said car in so doing failed to exercise that high degree of care for the safety of plaintiff which would ordinarily be exercised by very skillful and prudent street railway men

under similar circumstances; and if the jury further find from the evidence that while so seated on said sand box and while said car was in motion going at a moderate rate of speed, an explosion occurred in said controller box, attended by a loud report, and which caused flames to protrude from said box and partially envelop the space of the front platform of said car, whereby plaintiff was placed in peril and was excited and greatly frightened, and that while plaintiff was in such condition, she, believing it to be necessary for her safety so to do, jumped from said car to the street and was injured, then the jury will find their verdict for the plaintiff; provided they further find from the evidence that plaintiff at the time of receiving her said injuries, and at the time she boarded said car and took the seat upon the sand box on the front platform of said car and in close proximity to said controller box and at the time that she jumped from said car to the street, was exercising ordinary care for her own safety, that is, such care as a reasonably prudent person would ordinarily exercise under the same or similar circumstances.

"2. If the jury find the issues for the plaintiff, in determining the measure of damages, they may take into consideration the physical pain and suffering endured by the plaintiff, if any, since said injuries and in consequence thereof; the character and extent of said injuries, if any, and their continuance, if permanent, and may find for her such sum as in the judgment of the jury, under the evidence, will be an adequate compensation for her said injuries, if any, not to exceed the sum of ten thousand dollars."

The court of its own motion gave the following instructions:

"1. If the jury find from the evidence that prior to the explosion mentioned in the evidence, defendant had employed competent inspectors to inspect the controller and other electrical appliances in use on de-

fendant's cars, and that such inspectors had used a very high degree of care in making a reasonable inspection of the car upon which plaintiff was injured a short time prior to the time of her injury, and that such inspection failed to disclose any defect in the said controller or electrical appliances, and that said car and its appliances were apparently in a reasonably safe condition for the purposes for which it was being used by defendant, and that the explosion mentioned in evidence could not have been reasonably anticipated, foreseen, or prevented by defendant by the exercise of a very high degree of care in inspecting said car and its appliances, then plaintiff cannot recover in this action and your verdict must be for the defendant; *unless the jury should further find from the evidence that defendant's agents and servants in charge of its said car were negligent in permitting plaintiff to occupy a seat on the front platform of said car in close proximity to said controller box, as indicated and defined by the court in the instruction given you and marked No. 1.*

"2. The court instructs you that every person who becomes a passenger upon a car propelled by electricity, voluntarily assumes all risks that are necessarily incident to that mode of transportation. In other words, those inherent dangers which are peculiar to that mode of transportation and which the present state of electrical knowledge and mechanical invention is unable to prevent or overcome, are assumed by the passenger and cannot be charged against the carrier.

"If, therefore, you believe from the evidence, that the mechanical devices for applying and controlling the motor power of the car in question were of an approved and appropriate kind and were in good condition and repair immediately before the explosion, and that such explosion was due to some cause inherent in and peculiar to electricity and that the happening of such explosion could not be prevented by the exercise

of a high degree of care and foresight by skillful and careful persons engaged in such business, then the court declares to you that plaintiff assumed the risk of such explosion when she became a passenger on the car, and the fact that such explosion took place and that plaintiff was injured thereby under such circumstances, does not give her any right of action against defendant; *unless the jury should further find from the evidence that defendant's agents and servants in charge of its said car were negligent in permitting plaintiff to occupy a seat on the front platform of said car in close proximity to said controller box as indicated and defined by the court in the instruction given you and marked No. 1.*

"5. Although you may believe from the evidence that the burning out of fuses and explosions in motor boxes were of more or less frequent occurrence before the explosion in controversy, yet if you further believe from the evidence that such previous explosion had not been of such violence as to actually endanger passengers riding upon the front platform of the car upon which such explosion may have occurred, *and were not of such a character as to excite and frighten passengers on such front platform whereby they would be likely to jump off of such car while in motion,* then the court declares to you as a matter of law, that it was not negligence on the part of defendant to permit plaintiff to ride on the front platform on this particular car, notwithstanding you may further find and believe from the evidence that the explosion on this occasion was of such extraordinary force and violence and was accompanied by such flames or other danger-ous manifestations as to actually endanger or injure plaintiff and other persons on said front platform at the time."

The foregoing instructions without that portion in italics were asked by defendant. They were refused,

however, as asked, and given in the above form of the court's own motion over defendant's objection.

The court gave the following two instructions on behalf of defendant:

"3. The court instructs the jury that an accident may happen and a person be injured thereby which is not caused by the negligence or fault of any person connected therewith. And if from the evidence you believe that plaintiff's injuries were the result of mere accident or misadventure, then plaintiff is not entitled to recover and your verdict must be for the defendant.

"4. If from the evidence you believe that the explosion in question was the result of some unknown cause and that the happening of said explosion at the time and place of its occurrence was not anticipated and could not be foreseen by the exercise of a very high degree of care and foresight, then the court instructs you that defendant is not responsible for the result of said explosion, however deplorable, and your verdict must be for the defendant."

The court refused the following, among other instructions, requested by defendant:

"8. If after considering all of the evidence in this case you are unable to conscientiously determine whether plaintiff was injured as the result of mere accident as submitted by these instructions, or as the result of negligence, if any, on the part of the defendant, then you must find a verdict for the defendant.

"9. The court instructs the jury that it is not negligence to fail to provide against any injury that might attend the use of an appliance from which injury could not have been reasonably anticipated, and when its liability to happen is only shown by its actual occurrence. And if the jury believe from the evidence that defendant exercised such reasonable precaution to prevent accidents of the character in evidence, with respect to the appliances on the car in question, as

would be adopted by prudent street railway companies engaged in like business, then the court instructs you that defendant is not liable for plaintiff's injuries and your verdict must be for the defendant.

"10. The court instructs you that the defendant had the lawful right to propel its car by electric power and to use such appliances on its car as were necessary to enable it to apply said power; and the mere fact, if it be a fact, that said power was a dangerous one, and that the operation of said car by means of said power and appliances involved more or less risk to persons riding upon said car, cannot be taken or considered by you as any evidence whatever of negligence on the part of the said defendant.

"11. The court instructs the jury that the mere fact, if it be a fact, there was an explosion and that plaintiff was injured in consequence thereof, does not entitle her to recover in this action."

The first assignment of error is as to the overruling of defendant's challenge for cause of juror Gustav Schoenberg, it being shown that he had served as a juror within twelve months next preceding the trial, which was begun April 21, 1904. The statute relied upon by defendant, in so far as it relates to this question, is as follows:

Section 6547, Revised Statutes 1899. ". . . . And it shall be the duty of every court of record in said city to excuse from service as a juror every person who, being examined on the *voir dire*, . . . . has served on any jury in any court of this State within twelve months next preceding, if challenged for that cause by either party to the suit; and the court may excuse such person without challenge by either party." This statute was enacted in 1879 (Laws 1879, p. 30, sec. 9), and by express provision applies to cities with over one hundred thousand inhabitants. The defendant called for a special jury, under section 6566, Revised Statutes 1899, which provides for special

juries in cities of one hundred thousand inhabitants. It was enacted March 17, 1885. [Laws 1885, p. 74.] At the same session there was enacted section 6567, Revised Statutes 1899 (Laws 1885, p. 75), which provides that "no person shall be required to serve as a juror, either grand, petit or special, more than once in any year."

The question presented is, whether or not section 6547, supra, applies to special juries in the city of St. Louis, summoned under section 6566, supra, so far as the right to challenge is concerned. If section 6547 applies, it follows that Schoenberg was subject to challenge, if he had served as a juror within twelve months prior to the trial under consideration; but if section 6567 applies, then the prior service must have been in the same calendar year or jury year of the trial of the cause.

It is not a little difficult to see how the language "who has served on any jury in any court of this State within twelve months next preceding, if challenged for that cause," as used in section 6547, supra, can be construed as meaning anything else than what it says. Any such service, whether rendered in one year and extending over to the next year, will render a juror subject to challenge for that cause, provided such service was rendered within the twelve months next preceding the trial. The reason assigned by the court is clearly not in accord with the language of the statute. There is nothing in the statute which indicates that the juror must have served since the preceding October term of the court, the language being "within twelve months next preceding," etc.

Plaintiff, however, contends that the case of State ex rel. v. Withrow, 133 Mo. 500, is conclusive upon this question, and that as section 6547 is in precisely the same class as section 6544, the provisions of said section 6547 do not, under the ruling in that case, apply to the jury in the case at bar. In the Withrow

case the trial court undertook to enforce Rule 27 of the St. Louis Circuit Court, which provided that special jurors should be drawn from the jury wheel in the same manner common juries are drawn. It was held that a special jury could not be drawn as were common juries, and that as the rule was in conflict with the statute, it was invalid. The effect of the rule, if enforced, would be to give a party the right to a special jury, yet require such jury to be selected as a common jury.

Section 6566 says not a word respecting the qualifications of special jurors, nor as to challenges; so that we must look to the provisions of article 23, chapter 91, Revised Statutes 1899, entitled, "Juries in Cities with over 100,000 Inhabitants," for information and authority on such subjects. This article attempts to regulate the entire jury system in the city of St. Louis, and the only sections of that article which relate to the qualifications of jurors and the causes for which persons summoned as such shall be exempt or excused from jury service are sections 6547 and 6554. The only provision to be found in said article which by express terms confers upon any party to a suit the right to challenge a juror for any cause is that contained in section 6547, which provides that it shall be the duty of every court of record in said city to excuse from service as a juror every person whose name ought not to have been placed upon the jury list under the provisions of *this article,* or who has served on any jury in any court of this State within twelve months next preceding, *if challenged for that cause by either party to the suit;* and the court may excuse such persons without challenge from either party. It would, therefore, seem that sections 6547, 6554 and 6556 are not in conflict upon this subject, and that the right to challenge, as provided for by section 6547, applies to all juries, whether common or special, summoned under said article.

While section 6567 of said article provides that, "No person shall be required to serve as a juror, either grand, petit or special, more than once in a year," there is nothing in either section 6547 or section 6554 which makes it the duty of any court of record to excuse from service as a juror any person who has served as such during the year in which the case is being tried, nor which prohibits the summoning of such person as a juror, but by the express provision of section 6547 the time within which a person summoned as a juror may be challenged on account of having served upon a jury is twelve months next preceding the time of the trial. These sections are, therefore, not in conflict, and section 6547 is controlling. Moreover, section 6567 seems to confer upon a person summoned as a juror, and who has rendered service as such the same year, the personal privilege of claiming exemption from jury service upon that account, but there is nothing in the article which forbids the summoning of such person as a juror. It logically follows that the court erred in refusing to sustain defendant's challenge to said juror. As this error is presumed to be prejudicial, it is claimed by defendant that this presumption was not overcome by the facts disclosed by the record.

But when defendant's challenge for cause was overruled, defendant did not exclude Schoenberg from the jury by means of a peremptory challenge, which was a tacit admission that there was no objection as to the qualifications of such juror. Besides, Schoenberg dissented from the verdict. While the jury was composed of twelve men, only nine signed and returned the verdict, Schoenberg not being one of the nine. How can it be said, then, that the error of the court in overruling the challenge to Schoenberg materially affected the merits of the action? Section 865, Revised Statutes 1899, provides that "the Supreme Court or Courts of Appeals shall not reverse the judgment of

any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action.'' Now, if Schoenberg had been one of the nine jurors who made the verdict, there would be more of merit in defendant's contention; but as he was not, we are unable to see how defendant could have been prejudiced by the error of the court in overruling defendant's challenge, nor do we think it was injured thereby.

The first paragraph of plaintiff's instruction number 1 is claimed to be erroneous upon several grounds: First, that it instructed the jury to make a finding of fact concerning which there was no evidence; second, that they were required to find, first, that explosions in controller boxes were of frequent occurrence on defendant's cars; third, that such explosions were attended by such noise and flame as would imperil, excite and frighten passengers on the front platform and near the controller box; and, fourth, that defendant knew of the danger to passengers from such explosions.

It is conceded by defendant that ''short circuits'' are frequent on electrical cars, and that the fuses and fingers in the controller box often burn out; but defendant insists that there was no evidence that any of these occurrences were similar to the one in question, or that any of them were attended by such noise and flame as would imperil, excite and frighten passengers; that, on the contrary, the evidence was that they were not at all dangerous. Hand, one of the witnesses, testified that a person could sit on the top of the controller box and not be injured by the so-called explosion. But it appears from the record that defendant's witnesses based their statements, concerning the character of prior explosions in controller boxes on defendant's lines, upon the testimony of plaintiff's wit-

nesses, whose testimony was heard by these employees and experts. Defendant's witness, Huxley, on cross-examination, testified that he had seen explosions such as this one was upon the cars of the defendant. William Hand, a witness for defendant, being asked if he ever observed or learned of a blowing or a burning out of the controller box such as had occurred, according to the testimony in this case, answered, "Yes, sir; we had several in this city."

Defendant's witness, Mundy, on direct examination, testified:

"Q. Now, you have heard the testimony in this case, have you not? A. Some of it to-day. Q. I will ask you whether there is any way known to your profession by which an occurrence in the controller box, or in the circuit breaker, such as described, can be anticipated or guarded against? A. I don't know of any. . . . . Q. You said that with the use of the most approved appliances and the most careful attention, these explosives, as they are termed, have always occurred and always will occur on street cars? A. I would like to find some means of stopping it. Q. It is known and understood to be a fact? A. It is. Q. To what explosives do you refer in the last question? A. What you speak of is the trouble in the controller. . . . . Q. These explosives which you have referred to have occurred upon the Transit lines since you have known them, prior to August, 1902, have they not—prior to the date of the accident? A. Both prior and since."

Defendant's witness Smith testified on cross-examination:

"Q. Did you ever know of an explosion inside of a controller box? A. Oh, yes; I have known of them. Q. Prior to August 24th, 1902? A. Pardon me, it depends on what you call an explosion. Q. What I mean, a burning out—a loud report and flame coming

from the controller box? A. Yes, sir; I have seen that."

This testimony by defendant's witnesses as to other prior explosions in controller boxes on defendant's cars was all based on statements made by plaintiff's witnesses as to the nature of the explosion which was the primary cause of plaintiff's injury, and shows that defendant had previous knowledge of explosions similar to the one which occurred at the time plaintiff was hurt.

It is also contended by defendant that there was no evidence that any such explosion was attended by such noise and flame as would imperil and excite passengers. As to the character of the explosion in question, the testimony of witness B. O. Davidson was that there was a large explosion from the controller box, a flame issuing from the top of it that filled the vestibule and that part of the car, having the appearance of being all aflame. There was a loud explosion, followed by at least two smaller ones.

Mrs. Stephens testified that the explosion sounded like the firing of a revolver twice, and that the flame then leaped up to the top of the car, seeming to come out of the bottom of the platform.

Witness Birt Stephens, in describing the explosion, said that there was a flame, and smoke shot out from the top and bottom of the controller box and filled the front end of the car—it appearing that they (the smoke and flame) extended to the top of the vestibule; that the motorman jumped off the stool and kicked it over, knocking witness' mother, brother and witness himself off the car, as the motorman jumped off.

Witness Una Mount testified that the explosion blew off the top of the controller box (the witness calls it a "dynamo," but obviously means the controller box), the blaze going in every direction; that the noise first attracted her attention to the explosion and was

a sudden loud report followed by one large blaze of fire which continued until after witness left the car; that the motorman jumped off the car.

Plaintiff, testifying in her own behalf, stated that she remembered the explosion as beginning with a loud report like a pistol shot, followed by flames bursting from the controller box; that she, plaintiff, stood until the flames blistered her face and the motorman had jumped off, when she ran to the edge of the car and likewise jumped off.

Defendant's witness James W. Britton, who was the motorman on the car in question, testified that there was a great display of fire and smoke and a loud report.

We have already held that there was evidence to show that defendant had knowledge of prior explosions similar to the one testified to in this case, and having had such knowledge, it must also be held that defendant knew that such explosions were attended by such noise and flame as would imperil, excite and frighten passengers on the front platform of defendant's cars.

It is further complained of this instruction, that there is no evidence that any passenger had ever been imperiled, excited or frightened by reason of such explosions. Conceding that there is no such evidence, we are of the opinion that none was necessary, for common knowledge teaches us that such explosions would tend to frighten passengers on the platform of a car, as in this case, and tend to imperil their safety. In support of this view may be cited the fact that the motorman, himself, jumped from the car before plaintiff did.

It is said for defendant that the last paragraph in said instruction does not submit to the jury one of the affirmative defenses; that is, plaintiff's negligence in voluntarily riding on the front platform of the car and taking a seat upon the sand box. As to this con-

tention, it may be said that under the facts and circumstances disclosed by the record, the crowded condition of the car, etc., the plaintiff was not guilty of negligence in riding on the front platform of the car and sitting on the sand box; nor is there any evidence to show that plaintiff's knowledge and experience regarding the operation of electric cars, or dangers incident to riding on the front platforms thereof and sitting on the sand box, were such as to give her any ground for apprehending any danger from the position she occupied on the car. The negligence was on the part of those in charge thereof in not providing her a seat within the car, or warning her of the dangerous position she occupied, if dangerous they knew it to be. The instruction must have been understood by the jury as requiring the plaintiff to be free from contributory negligence during the whole of the time she was voluntarily riding upon the car, as well as at the time she jumped therefrom. But, even if it did not present the question of contributory negligence on the part of plaintiff, it was "no more than non-direction, not misdirection, and was not error in a civil case." [Railroad v. Shoemaker, 160 Mo. 425.] If defendant desired to have that question passed upon by the jury, it should have asked for an instruction thereon, which it did not do.

It is asserted that the action of the court in refusing defendant's instruction numbered 1, as asked, and in modifying it and giving it as modified to the jury, was erroneous. Defendant insists that the instruction, as requested, properly submitted the theory upon which the case was tried from defendant's standpoint; that it declared that if proper care had been exercised by defendant in the inspection of the electrical appliances of the car and no defect was discovered on such inspection, and the accident could not have been reasonably anticipated, foreseen or prevented by defendant, then plaintiff could not recover; that if de-

fendant had exercised all the care that the law imposed upon it, it had discharged its full duty towards plaintiff, and her injuries must be attributed to a legal accident.

The court modified the instruction as asked by adding the words: "unless the jury should further find from the evidence that defendant's agents and servants in charge of said car were negligent in permitting plaintiff to occupy a seat on the front platform of said car in close proximity to said controller box, as indicated and defined by the court in the instruction given you and marked No. 1." It is argued that the amendment nullifies the instruction, and that the cause was tried on the theory that the defendant's only negligence was in permitting plaintiff to occupy this seat with defendant's knowledge of its danger to passengers. One of the allegations in the petition, however, is to the effect that defendant was guilty of negligence in permitting the apparatus to become defective, and the explosion to occur.

There was evidence tending to show that explosions, similar to that proven to have occurred upon the car in this instance, had occurred on previous occasions upon cars belonging to the defendant. Defendant's expert witnesses testified that such explosions had frequently happened, and would always happen upon cars equipped with electrical apparatus similar to that of the car upon which plaintiff was a passenger. So that there was ample evidence tending to show that defendant must have known, or was chargeable with knowledge of, the danger incident to passengers riding on the front platform.

It is further contended by defendant that this instruction is in conflict with plaintiff's instruction number 1 and defendant's instruction number 4; that, while by the first paragraph of plaintiff's said instruction number 1 defendant must have known of the danger, and been able to anticipate, foresee or prevent it, yet

this instruction in effect says that defendant's act in permitting plaintiff to sit on the sand box was a negligent act even though it could not have had knowledge of such danger. We cannot see the point of conflict between this instruction and the first paragraph of plaintiff's instruction number 1. We think that it correctly stated the law of the case when it, in effect, told the jury that defendant was required to employ competent inspectors to inspect the controller and other electrical appliances, and that such inspectors were required to use a very high degree of care; and, in addition, submitted to the jury the question of defendant's negligence in permitting plaintiff to sit upon the sand box on the platform of the car. Nor is said instruction in conflict with defendant's instruction number 4, which correctly presents defendant's theory of the case, so far as the explosion, and defendant's responsibility or non-responsibility therefor, were concerned, leaving out of consideration the question of defendant's negligence in permitting plaintiff to sit on the sand box within the sphere of danger. The instruction complained of covers and correctly presents both questions to the jury, and there is no conflict between it and any other instruction given.

Defendant also insists that its instruction number 5 followed accurately the evidence, and that the court amended it to its prejudice. This instruction, as offered, told the jury that if the previous explosions had not been of such violence as to actually endanger passengers riding upon the front platform of the car upon which such explosions may have occurred, it was not negligence on the part of defendant to permit plaintiff to ride upon the platform of this particular car.

The court amended said instruction by inserting, immediately after the word "occurred," these words: "And were not of such a character as to excite and frighten passengers on such front platform whereby they would be likely to jump off such car while in mo-

tion." The instruction, as asked, entirely ignored that which everybody is presumed to know, and that is, that such an explosion, under the same circumstances, would alarm passengers in proximity to it, and, in all probability, cause them to become panic stricken and to jump from the car in an effort to escape from the apparent danger; and it makes no difference even though the previous explosions might not have been of such a character as to actually endanger passengers riding under similar circumstances, for it is just as culpable to negligently frighten a passenger, and thereby cause him to jump from the car and injure himself, as it is to injure him directly. And this is true, although no injury would have resulted had no attempt to escape been made. [Bishoff v. Railroad, 121 Mo. 216; McManus v. Railroad, 116 Mo. App. 110; Ephland v. Railroad, 137 Mo. 187; McPeak v. Railroad, 128 Mo. 617.]

Error is assigned upon the court's refusal of defendant's instruction number 9. With respect to this proposition, it is only necessary to say that the point presented by this instruction is fully covered by defendant's amended instructions numbers 1 and 2.

A final contention is that defendant's requested peremptory instruction, offered at the close of all the evidence, should, because of the nature of the evidence, have been given by the court. Such an instruction should never be given in any case where the facts bearing upon the issues are disputed, or are undisputed but admit of different constructions and inferences, or upon which, as in this case, reasonable minds might differ. [Berry v. Railroad, 124 Mo. 223; Eckhard v. Railroad, 190 Mo. 593; Marshall v. Schricker, 63 Mo. 308; Ostertag v. Railroad, 64 Mo. 421; Mauerman v. Siemerts, 71 Mo. 101; Charles v. Patch, 87 Mo. 450; Railroad v. Ives, 144 U. S. 408.]

This case forms no exception to the general rule. The evidence was conflicting upon all the issues, and

there was plenty of evidence to take the case to the jury.

We find nothing in the record which would justify this court in disturbing the verdict. The judgment is affirmed. All concur.