CABELL CALLOWAY, Appellant, v. PAUL M. FOGEL, LYLE L. FOGEL, MORRIS S. FOGEL and L. E. GUTHRIE, Co-Partners and Doing Business as the PLA-MOR BALLROOM, Respondents.—No. 40634.— 213 S. W. (2d) 405.

Division One, July 12, 1948.

Rehearing Denied, September 13, 1948.

*Maurice J. O'Sullivan* and *John G. Killiger, Jr.,* for appellant; *Samuel Jesse Buzzell* of counsel.

48

*Paul C. Sprinkle, William F. Knowles* and *Sprinkle & Knowles* for respondents.

[406] BRADLEY, C.—Plaintiff (appellant) filed petition in two counts. In the first count $50,000 actual and $50,000 punitive damages were asked for an assault and battery upon plaintiff by one Todd, employed by defendants who conducted a ballroom in Kansas City. In the second count plaintiff asked for $50,000 actual and $50,000 punitive damages for false arrest and imprisonment. Defendants' answer is, in effect, a general denial, and they filed a counterclaim asking for $50,000 actual and $50,000 punitive damages. The counterclaim is based principally on alleged unfavorable publicity because of the encounter upon which plaintiff bases his count for assault and battery. Also an item of the counterclaim is an alleged refund of about $2,000 made by defendants to their patrons on the night of the alleged assault and battery. After the assault the orchestra playing for the dance in defendants' ballroom refused to further perform and the dance terminated, hence the alleged refund. Verdict and judgment went for defendants on both counts of plaintiff's petition and for plaintiff on the counterclaim. Plaintiff appealed.

Error is assigned on defendants' instructions 10, 11, and 12, and on argument of counsel.

Plaintiff, a colored man, is a showman, orchestra leader and music composer of considerable note, and professionally known as Cab

Calloway. He and his orchestra have performed throughout the United States and Canada, and have performed in England, Holland, Belgium and France. Defendants operate a place of amusement at 3124 Main Street, Kansas City, under the name of Pla-Mor Ballroom. The parents of Felix H. Payne, a young colored man, resided in Kansas City. Felix, who was reared in Kansas City, was employed in the Department of Labor, Washington. December 22, 1945, Felix, his wife and their young daughter, were visiting his parents in Kansas City. Plaintiff, earlier in his career, had performed in Kansas City and he and Felix Payne had been good friends for some years and plaintiff, on December 22, 1945, went to Kansas City to visit his friend Felix.

On the night of December 22d, defendants were conducting a dance at the Pla-Mor Ballroom. The music for the dance was furnished by the orchestra of Lionel Hampton, a colored man, and also of some note as an orchestra leader. Plaintiff had known Hampton for about 10 years and saw him in the afternoon of December 22d in the restaurant of Street's Hotel, Kansas City. Hampton invited plaintiff and Felix Payne to visit him and his orchestra at the Pla-Mor Ballroom that evening. Plaintiff said to Hampton, "If you will make preparations for us to come we will", and Hampton said that he would see the manager of the ballroom "and make preparation for you to come out." And Hampton did speak to the manager about this visit some two hours before plaintiff and Payne arrived at the building where the dance was being held.

According to plaintiff's case he and Payne arrived at the ballroom building entrance about 10:45 P. M., about 15 minutes before an intermission period. Both were sober; neither had had a drink.

Plaintiff purchased two tickets, $1.50 each. He said it was customary for such visitors as he and Payne to purchase tickets; that such was a token contribution to the orchestra where the pay was affected by the gate receipts. Plaintiff and Payne proceeded towards the [407] inner lobby. As they left the ticket booth the cashier noticed their color; rang a buzzer for the doorman and told him to stop them. Defendants' manager, W. H. Wittig, appeared, took the two tickets from plaintiff's hand, "snatched" them, according to plaintiff, and delivered $3.00 to Payne. About that time W. E. Todd, a member of the Kansas City police, but who "was employed out at the Pla-Mor" of an evening until about 12 o'clock, came up to the place where plaintiff, Payne, and Wittig were, plaintiff and Wittig being engaged in conversation. Plaintiff was endeavoring to explain why he and Payne were there. When Todd came up he took over; told plaintiff and Payne that negroes were not allowed there; refused to listen to any explanation; Wittig and Todd made no attempt to identify plaintiff or permit him to explain; they did not personally know plaintiff and Payne, but both knew that plain-

tiff had been invited by Hampton; both refused to heed any effort plaintiff made to identify himself or explain. And according to plaintiff's case Todd, without excuse or justification, beat him over the head with a pistol; knocked him down and inflicted upon his head severe injuries.

On the other hand, according to defendants' case, plaintiff and Payne were drunk; made no attempt to identify themselves or explain why they were there, but that plaintiff expressed the determination to "go up to the ballroom regardless of who said he could or who said he couldn't." And according to defendants' case Wittig and Todd explained to plaintiff that the dance was for white folks and that negroes could not go into the ballroom, but that plaintiff would not listen. Todd said Payne "drew his hand back as if to swing at him", and that plaintiff "grabbed him (Todd) around the throat" and threw him "to the floor", and "when I got up I hit him with my fist and knocked him down injuring my hand. While he gets up, starts at me again, I drew my revolver; it is an automatic, and hit him on the head. He went down; got up again; I hit him again and he went down again and the last time he stayed down." Plaintiff and Payne were arrested; taken to the police station and later that night were released on bond. It will not be necessary to detail the evidence because it is, in effect, conceded that plaintiff made a submissible case on both counts of his petition, and since defendants did not appeal from the verdict and judgment against them on their counterclaim that feature of the case went out of the picture.

Defendants' instruction No. 10 is as follows: "The court instructs the jury that if you find and believe from the evidence that the plaintiff went to the Pla-Mor Ballroom and there purchased tickets; that he was stopped in the entranceway to said ballroom and the tickets were taken and the money refunded to him, if you so find, and if you further find and believe from the evidence that the plaintiff and Felix Payne accompanying him were requested to leave, but refused so to do, if you so find, and if you further find and believe from the evidence that the plaintiff and Felix Payne were informed that if they did not leave they would be placed under arrest, if you so find, and if you further find and believe from the evidence that plaintiff assaulted William Todd, a police officer, if you so find, after William Todd had asked that the police squad car be called, if you so find, and if you further find and believe from the evidence that following said assault, if you so find, the plaintiff was subdued by the said William Todd and there arrested and held by him while he was acting as a police officer for Kansas City, Missouri, if you so find, and if you further find and believe from the evidence that the arrest of the plaintiff was not instigated, caused or encouraged by defendants but that the plaintiff was arrested by police

officers acting as such police officers, if you so find, and that any injury the plaintiff received was caused by him resisting arrest and voluntarily engaging in an altercation with the police officer, if you so find, then you are instructed that the plaintiff cannot recover and your verdict shall be for the defendants.''

In the brief plaintiff says of this instruction: ''The charges filed by Todd (against plaintiff and Payne) were intoxication and resisting arrest, but the instruction did not. require a finding 'that plaintiff was intoxicated and that there could be no resisting of arrest unless there was a lawful arrest. [408] The instruction did not require a finding that plaintiff was arrested for intoxication or that he was arrested for that reason or that he was so informed or that he was guilty of that offense or of assault or that he was told he was arrested therefor.'' The record shows that Todd was still a police officer during the hours he was on duty at defendants' ballroom, and defendants' evidence was that plaintiff made an assault on Todd (grabbed him around the throat) before Todd had done anything other than endeavor to persuade plaintiff and Payne to leave the premises. If the facts were found as hypothesized in the instruction, then plaintiff was not entitled to recover and the omissions of which plaintiff complains are harmless, and such will not work a reversal. Oglesby v. St. Louis-San Francisco Ry. Co., 318 Mo. 79, 1 S. W. (2d) 172.

Instruction 11 told the jury that, with respect to the charge of false arrest and false imprisonment, ''it is the law that if a member of the public commits a misdemeanor or crime in the presence of a police officer that that police officer has the right to arrest that person without a warrant and that (such) arrest is a legal one'', and the instruction further told the jury ''that it is the law that if there is a legal arrest that there can be no false imprisonment.'' Then the instruction went on to tell the jury that if they found that plaintiff went to the ballroom in an intoxicated condition; that he refused to leave upon request; that without warning or provocation he assaulted Todd; that Todd was a police officer, then Todd had the right to arrest plaintiff, and plaintiff could not recover for false arrest and false imprisonment. Plaintiff says that instruction 11 is erroneous ''for the reasons stated with reference to instruction No. 10.'' We have ruled with respect to those reasons. Plaintiff says that ''failure to leave the public lobby upon request was not a crime nor a violation of any ordinance.'' Such may be so, but that is no reason to rule that instruction 11 is erroneous. We find nothing wrong with instruction 11 and plaintiff cites no case that supports the contention that instruction 11 constitutes reversible error. Reference is made to Barree v. City of Cape Girardeau, 132 Mo. App. 182, 112 S. W. 724. In that case there was no evidence that the arrest was made by the arresting officer while acting ''as a police-

man." Such is not the case here. Instruction No. 12 submitted defendants' counterclaim. Since the verdict and judgment on the counterclaim were for plaintiff and no appeal therefrom, such instruction is not for review. We might say, however, that plaintiff complains of instruction 12 only in connection with the complaint on argument made by defendant in connection with instruction 12. But since the jury found against the counterclaim plaintiff was not harmed by that argument.

▇ We now take up the assignment on argument of counsel. The argument in full appears in the record and there were not always objections when such should have been made. For reference convenience we designate the excerpts we set out from the argument as paragraphs (a), (b), and (c). During argument Mr. Sprinkle, counsel for defendants, said:

(a) "From the very outset in the trial of this case there has been repeated reference to the fact that the plaintiff is an artist; that he has made records; that he has made pictures; that he has played in an orchestra; that he has led in an orchestra; he is an artist, therefore, the inference is from what has been said that he should recover because he is an artist. The more I thought about that the more I thought the pages of history have been turned back and we were back to the time of the divine right of kings, when kings could do no wrong whatever they did; the subjects had to step. Then I thought well, then, we must have that policy now at the present time. We have the divine right of artists or musicians, therefore, they can do no wrong; therefore, they are entitled to come into court and say, 'We are musicians; we are artists; we have done many things, therefore we are entitled to recover.' Then I think back a moment about some artists. I can remember Fatty Arbuckle; he was an artist and he dearly paid for the penalty of his crime. Mr. O'Sullivan (counsel for plaintiff): I object to that as wholly immaterial, prejudicial, outside the record. [409] Mr. Sprinkle: I can think about Charley Chaplin, he is an artist. Mr. O'Sullivan: I object to that, your Honor, it is wholly immaterial, and is solely done for the purpose of prejudice. The Court: Yes. Mr. Sprinkle: I can think about many artists; I can think about a little artist over in Germany who started the World War. He was an artist; he had a little mustache; he thought he could do no wrong because of the loss of lives of millions of men."

(b) "You know as I listen to these witnesses testify, here is Cab Calloway, now 39; Felix Payne, now 34, and I wondered why wasn't Calloway out doing his share when the war was being fought. Is it because of his— Mr. O'Sullivan: I object to that ask— Mr. Sprinkle: Is it because of his physical inability to do it? Mr. O'Sullivan: And ask the jury be admonished because he knows better. The Court: Confine yourself to the evidence, Mr. Sprinkle. Mr. Sprinkle: Be-

cause he was unable to go? Mr. O'Sullivan: I ask that counsel be reprimanded for repeating the statement. The Court: Confine yourself to the evidence, Mr. Sprinkle. Mr. Sprinkle: Why did he spend his time in this country and other countries playing for the public? Why is that all he has ever done? Mr. O'Sullivan: Object to that as violating the court's ruling. The Court: Yes, it hasn't anything to do with this case, gentlemen, nothing in the world to do with it. Proceed with the argument; confine yourself to the evidence in this case.''

(c) ''You know, in trying this lawsuit I represent a lot more than the Pla-Mor and these four men (defendants) sitting here; I represent Kansas City. I represent this community. I represent the Kansas City way of life. I represent the way we live and the way we expect others to live. And members of the jury, when you go home tonight and look your families in the eye, I want you to be able to say, 'Well, I represented Kansas City also, and we didn't let New York come out and take a chunk out.' ''

''Trials before juries ought to be conducted with dignity and in such manner as to bring about a verdict based solely on the law and the facts. Hence reckless assertions unwarranted by the proof and intended to arouse hatred or prejudice against a litigant or the witnesses are condemned as tending to cause a miscarriage of justice.'' Monroe v. Chicago & A. R. Co. et al., 297 Mo. 633, 249 S. W. 644, l. c. 646, and cases there cited. The same notion is admirably expressed in O'Hara v. Lamb Construction Co. (Mo. App.), 197 S. W. 163, l. c. 165, as follows: ''We commit to the determination of a jury matters involving not only our property but our lives. Due administration of justice demands that the jury in passing on such grave questions should not be allowed to have injected in a case, either by evidence, remarks of counsel, or even by the conduct of the judge, any extrinsic matter that tends to create bias or prejudice. The evil effect of such matters is not always cured by the ruling of the court withdrawing them from consideration or even rebuking counsel. The red hot iron of prejudice has been thrust into the case; merely withdrawing it still leaves a festering wound.''

When there is no evidence to justify it is always improper for counsel to indulge in argument to the jury which tends towards the prejudice of one party or to the undue sympathy for the other. Better Roofing Materials Co. v. Sztukouski et al. (Mo. App.), 183 S. W. (2d) 400, l. c. 403. See also Beer et al. v. Martel, 332 Mo. 53, 55 S. W. (2d) 482.

There was no basis in the record to justify the comparison of plaintiff, paragraph (a), with Fatty Arbuckle, Charley Chaplin, and Adolph Hitler. And the same is true as to the suggestion in argument, paragraph (b), that plaintiff might be a slacker. Such, we

think, tended to the prejudice of plaintiff. And after the court had ruled that the artists comparison was improper, counsel persisted in the same [410] tenor, and there was like persistence after the court had ruled respecting the slacker argument in paragraph (b).

The climax, and probably the most damaging, came as set out in paragraph (c), and no objection was made to this argument. While counsel disclaimed, elsewhere in argument, any intention to invoke "the racial angle", the implication in the argument in paragraph (c) is, we think, unmistakable. Even the wayfaring man would have got that. There was no objection, as stated, but transgression can be so grave as to be reviewable even though the point is not preserved for review. Rule 3.27 provides: "Plain errors affecting substantial rights may be considered on motion for new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."

The rule was applied in Leaman v. Campbell 66 Express Truck Lines, Inc., 355 Mo. 939, 199 S. W. (2d) 359. In that case the plaintiff sued to recover for the death of his wife killed in a collision. Counsel for the defendant indulged in prejudicial argument not justified by the record; he implied that the driver of the car in which the plaintiff's wife was riding when killed was drunk and that plaintiff's reputation had caused him to file his cause in a county where he was not known. Sufficient objections were not made to preserve the argument for review, but as stated, Rule 3.27 was applied, and we think the rule should be applied here to the argument in paragraph (c). In the brief plaintiff complains of considerable argument, not objected to, which we do not set out. The only objections were as to the argument in paragraphs (a) and (b). We have mentioned, supra, the persistence of counsel after the court had ruled that the argument objected to in (a) and (b) was not proper. The observation is made in Houck v. L. A. Truck Lines (Mo. App.), 131 S. W. (2d) 366, that "verdicts won by such tactics should not be permitted to stand."

A fair trial is underwritten, so to speak, in every forum in Missouri regardless of the color, the creed, or the country of the litigants. Our new code and our new court rules are a long way from another day when a fair trial was sometimes denied for no better reason than that counsel did not object or except. We do not mean to imply that counsel may with impunity dispense with objections, but there can be such deprivations of a fair trial as to justify the application of Rule 3.27.

We think that the argument in paragraphs (a), (b), and (c) was prejudicial and tended to deprive plaintiff of a fair trial, and that

the judgment should be reversed and the cause remanded. It is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.