241 S.W.2d 782 (1951)
SCHWINEGRUBER
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 28085.
St. Louis Court of Appeals. Missouri.
July 6, 1951.
*784 Coburn, Storckman & Croft, Clem F. Storckman, and W. H. S. O'Brien, all of St. Louis, Mo., for appellant.
Everett Hullverson, Orville Richardson, Leland Jones, and Hullverson & Richardson, all of St. Louis, for respondent.
HOUSER, Commissioner.
This is an action for damages for personal injuries claimed to have been sustained by Beulah Mae Schwinegruber on December 31, 1948 while a passenger on a bus belonging to defendant public service company in St. Louis.
Plaintiff invoked the doctrine of res ipsa loquitur, charging that while she was in the act of taking a seat in the bus and "while said motor bus was in motion and moving on and along * * * Chouteau Avenue * * * defendant negligently and carelessly caused said motor bus to give a sudden, violent and unusual jerk, jar and jolt which caused plaintiff to be thrown about violently in said bus and to be injured." A circuit court jury returned a $5,000 verdict in favor of plaintiff. Following unsuccessful after-trial motions defendant has perfected this appeal.
Plaintiff, a 48 year old married lady, her husband and 11 year old daughter were on their way to a church function, a New Year's watch party, at the time of the accident, and had just boarded the bus. While the husband was at the fare box and the plaintiff was going to take a seat in the bus it started and stopped suddenly and plaintiff was thrown to the floor. Defendant did not deny that the operator of the bus applied the brakes and stopped the bus with sufficient force to produce the fall, but contended that the sudden stop was necessary in order to avoid a collision with an automobile which approached from the rear and suddenly turned to the right in front of the bus. Plaintiff characterized the movement of the bus as a "sudden, terrific jerk" which threw her backwards and onto the floor. Her husband stated that it was a "terrific jerk" and the daughter said it was a "terrible jerk." None of plaintiff's witnesses saw the automobile which defendant's operator blamed for the stopping of the bus nor did plaintiff or her witnesses particularize with respect to the negligence of the defendant; they did not know what caused the sudden stopping.
The assignments of error strike at Instructions Nos. 1, 3 and 5; certain statements made by plaintiff's counsel in his closing argument to the jury; the failure of the court to strike certain medical testimony; and the size of the verdict, which defendant claims is excessive.
Instruction No. 1 is a standard res ipsa loquitur instruction, concededly properly drawn under the prescription of Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001. Instruction No. 2 is an exonerating instruction given for the benefit of the defendant, hypothesizing the facts upon which defendant sought to be excused from the results of the sudden stop. It authorizes a defendant's verdict upon a finding that an automobile turned from the left-hand side of the bus "in front of and in close proximity to" the bus; that it was necessary to make a sudden stop "in order to avoid a collision" with the automobile; that the bus was stopped to avoid a collision, and that in so doing the bus operator exercised the highest degree of care.
Instruction No. 3 sought to inform the jury of the effect of concurring negligence on the part of the automobile driver and to save a verdict for plaintiff in spite of such concurring negligence if the jury also found the defendant guilty of negligence. Instruction No. 3 follows:
"The Court instructs the jury that under the law of the State of Missouri all persons whose negligence concurs to cause an injury may be held jointly and severally liable for such injury.
"The Court further instructs you that if you find from the evidence under the other instructions submitted to you that the defendant St. Louis Public Service Company in this case was negligent and that such negligence, if any, directly concurred with the negligence of any other persons or automobile drivers and contributed to cause plaintiff's injuries, if any, then your verdict should be in favor of the plaintiff *785 and against the defendant St. Louis Public Service Company."
Defendant contends that Instruction No. 3 fails to hypothesize the necessary facts with reference to the negligence of the automobile driver and gives the jury a roving commission. It is true that neither in Instruction No. 3 nor elsewhere in the instructions is there any hypothesization of the facts upon the basis of which the jury could make a determination of negligence vel non on the part of the automobile driver. No rule, guide or standard is given the jury by which to measure his conduct in this respect. This is not error, however, for the reason that the automobile driver is not a party to this action. The rights of the defendant could not have been prejudiced, in any event, by the failure of the instruction to hypothesize these facts. If defendant was negligent and there was causal connection between its negligence and plaintiff's injury (and the instruction required such a finding "under the other instructions" in the case) it is liable regardless of the fact, kind, quantity or quality of the automobile driver's negligence and no matter what route the jury traveled or by what process, regular or irregular, the jury found the automobile driver negligent.
Defendant contends that although Instruction No. 1 is properly drawn it was error to give it because of the content of Instruction No. 5, which follows:
"With regard to the burden of proof and its being on the plaintiff, as referred to in another instruction, you are instructed that if you find and believe from the evidence that the occurrence took place as set out in Instruction No. 1 and that it would not have happened without some negligence on the part of the bus operator, and if you further find that such negligence, if any, caused plaintiff to be thrown to the floor of said bus and to be injured, then such finding by you would mean that plaintiff has met and carried her burden of proof and you may so find.
"To meet and carry her burden of proof in this case, Mrs. Schwinegruber was not required to prove some certain and specific act of negligence or more specific negligent omission of care by the defendant.
This is a "counter burden of proof" instruction. Being a cautionary instruction, the giving or refusing of such an instruction, if in proper form, ordinarily is within the discretion of the trial court, although its use is not commended and has been discouraged by the Supreme Court. Davis v. Kansas City Public Service Co., Mo.Sup., 233 S.W.2d 679, 681; West v. St. Louis Public Service Co., Mo.Sup., 236 S.W.2d 308.
Defendant challenges its use in the case at bar on the ground that the clause "and that it would not have happened without some negligence on the part of the bus operator" particularizes with respect to the negligence which caused the casualty, thereby constituting an abandonment of plaintiff's charges of general negligence in Instruction No. 1, and effecting a conflict and an inconsistency.
The same contention was decided adversely to the defendant in Davis v. Kansas City Public Service Co., supra, where, in a res ipsa loquitur case, plaintiff's counter burden of proof instruction read as follows:
"Instruction No. C submits to you the issue of what is known as burden of proof and its being upon the plaintiff throughout the trial. So in connection with this issue of burden of proof you are instructed that if you believe and find from the greater weight of the credible evidence the propositions and issues to be as submitted to you by Instruction No. 2, then it would be your duty to find that the plaintiff had met and carried such burden of proof required by the law and instructions and that defendant was negligent.
"And on the issue of negligence of the defendant as submitted to you by Instruction No. 2, you are instructed that such negligence need not be proven by direct and specific testimony, but such negligence may be inferred by the jury from the facts and circumstances in evidence, unless the jury finds from the evidence to the contrary."
In that case the Supreme Court, indicating that the instruction is not a model and could have been refused, nevertheless decided that it was not prejudicially erroneous and that its deficiencies were not sufficient *786 to warrant the granting of a new trial, considering all the instructions together. Defendant seeks to distinguish the counter burden of proof instructions in the two cases on the ground that in the Davis case there was saving language used which is not present in Instruction No. 5, namely, that part of the Davis instruction which reads "but such negligence may be inferred by the jury from the facts and circumstances in evidence, unless the jury finds from the evidence to the contrary", and that part of the instruction which refers to Instruction No. 2. It is further sought to distinguish the two instructions by virtue of the fact that Instruction No. 5 in the case at bar contains the language "and that it would not have happened without some negligence on the part of the bus operator," which defendant contends singles out the bus operator for the first time, adding facts and circumstances different from and in addition to the facts hypothesized in plaintiff's main verdictdirecting Instruction No. 1.
The distinctions sought to be drawn do not require the reversal of this judgment. We do not think that, reading all the instructions together, the challenged portions of Instruction No. 5 had the effect of nullifying the direction to the jury in Instruction No. 1 to consider all the evidence in the case before they could infer defendant's negligence. If defendant's counsel felt that Instruction No. 5 should have specifically restated that the jury should consider all of the evidence in the case, they could have asked for a clarification of the instruction. Nor do we find that plaintiff lost her right to rely upon the res ipsa loquitur doctrine by relating defendant's negligence to some act on the part of the bus operator. No particular or specific act of negligence on the part of the bus driver was either charged, proved or submitted by any instruction offered by plaintiff and the specific negligence of the bus driver and the precise cause of the sudden stopping was "still left in doubt" and not "clearly shown" by the plaintiff. Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S.W.2d 506. In order to constitute a submission of specific negligence the instruction must not only identify the particular servant whose negligence is complained of but it must also point out wherein he was negligent, i. e., the specific negligent act. Boulos v. Kansas City Public Service Co., 359 Mo. 763, 223 S.W.2d 446, loc.cits. 450, 451 and cases cited in syllabus (4).
It is further urged that the last paragraph of Instruction No. 5 invalidates it, particularly because of the use of the comparative "more" which defendant says renders the instruction confusing, misleading and "almost unintelligible." We disagree, believing that the meaning sought to be conveyed is clear enough, namely, that plaintiff was not required, in order to carry her burden of proof, to prove any more specific negligence than that hypothesized in Instruction No. 1.
Defendant complains that in the final argument to the jury plaintiff's counsel inferred that defendant's bus driver was intoxicated at the time of the accident. The record follows:
"Here are these people starting out to do a very fine thing, a thing that more of us ought to do on New Year's Eve, going to a spiritual affair, a fine respectable group of people going to where we all ought to go. They were filled with the sort of spirit that we all ought to be filled with on the pre-New Year's day. Whether the chauffeur was filled with any spirit of any kind I don't know.
"Mr. O'Brien: Your Honor, I will ask that that be stricken, that is inflammatory.
"Mr. Hullverson: No, it is not inflammatory, by the actions of the chauffeur, I don't know.
"The Court: I will sustain the objection to the remark that he might have been filled with spirits, it depends upon what kind of spirits you mean, Mr. Hullverson, anyhow I will sustain the objection.
"Mr. Hullverson: "I don't know either, Your Honor, what kind of spirit it was."
The comment was improper. The only justification plaintiff offers is that it was "a play on words, a jest about a matter which no one could have seriously mistaken." *787 It is not a jesting matter, however, to infer that the driver of a motor vehicle has been drinking, where there is no support in the evidence for the inference. When such unjustified comments of counsel are determined to have influenced and entered into the verdict of the jury, Leaman v. Campbell 66 Exp. Truck Lines, 355 Mo. 939, 199 S.W.2d 359, or where the language of counsel is so reckless and extravagant that it could only have a tendency to arouse hostility, resentment, aversion or prejudice, Dodd v. Missouri-Kansas-Texas R. Co., 353 Mo. 799, 184 S.W.2d 454; Calloway v. Fogel, 358 Mo. 47, 213 S.W.2d 405, such arguments produce the reversal of judgments. In this case, however, we do not feel justified in overturning the judgment on this ground. The words, while improper and ill-chosen, are not inherently such as to compel the conclusion that defendant was prejudiced thereby. The trial judge who had the best opportunity to observe the effect of the colloquy on the jury did not consider the matter of serious enough import to upset the verdict on this ground. He sustained the objection, and no further action was requested by counsel, and while this fact does not prevent us, under Rule 3.27 of the Supreme Court, from reviewing the matter, Leaman v. Campbell 66 Exp. Truck Lines, supra, it does nevertheless indicate that defendant's trial counsel was satisfied that the error had been arrested. We are willing to abide by the judgment of the trial court that a new trial was not thereby made necessary. There was no abuse of discretion on the part of the trial court in this connection.
Another assignment of error is that Dr. Pernoud's testimony with reference to hypertrophic arthritis and aggravation thereof was based upon hearsay and not upon facts and that the court erred in not striking his testimony. Dr. Pernoud examined plaintiff on five occasions. He testified to spasticity, reflex jerks and tenderness in the back on pressure; that his findings indicated an osteo-arthritis of the spine. He told the jury what osteo-arthritis is and answered a hypothetical question concerning the effect of an accident such as plaintiff's upon such a condition. The plaintiff's counsel asked: "Did you hear * * (Dr. Sheets testify) with reference to the parts of the bony spicules or exostosis being broken from the arthritic structure of the spine there?" Upon receiving an affirmative answer counsel for plaintiff asked "Does it require considerable violence or not to cause those parts to be broken?" After the witness had answered, defendant's counsel objected that the answer was based on a medical fact testified to by another witness.
Of course, a doctor properly may give his opinion based upon a hypothetical question made up wholly from facts testified to by other witnesses, Prince v. Metropolitan Life Ins. Co., 235 Mo.App. 168, 129 S.W.2d 5, loc. cit. 6, but what defendant has in mind is the rule of law that a doctor may not be permitted to give an opinion based upon an opinion of another doctor. That is not the situation presented here. The question asked and the answer given were hypothetical and general; they did not include this plaintiff. The doctor was not expressing an opinion that bony spicules were broken from plaintiff's arthritic spine on the basis of Dr. Sheets' testimony to that effect. Dr. Pernoud did not then, or at any time, venture an opinion that plaintiff's spinal structure had suffered the breaking of the bony spicules or exostosis. The question whether Dr. Pernoud heard Dr. Sheets' testimony was "casual and parenthetical" rather than demonstrative of an intention to have Dr. Pernoud base his opinion on Dr. Sheets' opinion. See Adams v. Carlo, Mo.App., 101 S.W.2d 753, loc. cit. 760. There was no error in this action of the court.
On cross-examination defendant's attorney asked Dr. Pernoud "Now how do you in connection with Mrs. Schwinegruber's case know anything about such a situation?" (referring to fragmentation of the small spiculi of bone). The doctor answered "I saw the X ray report and I heard Dr. Sheets' testimony." He further testified that he had never taken or seen any X rays of plaintiff; that he "had the value of the report of those that were taken" *788 and felt that it would be unnecessary duplication to take further X rays. The X rays, never introduced during plaintiff's case, were introduced in evidence by defendant and interpreted by defendant's medical witnesses. There is no error in this situation. This is not the case where the doctor says "I am of the opinion that she had fragmentation of the small spiculi of the spinal structure because I heard Dr. Sheets so testify and because I read the X ray report which said so." That clearly would be erroneous. In the case at bar the only testimony given by Dr. Pernoud that plaintiff had osteo-arthritis was based upon the inflammatory condition he found by manipulation. He gave that as the basis for his conclusion. He did not at any time say that he based his opinion upon the X ray report or upon Dr. Sheets' testimony. Nor did he give his conclusions, if any, arrived at by reading the X ray report or from hearing Dr. Sheets. He simply stated that he had read the report and heard the testimony.
Furthermore, the objection was too general. Counsel objected and moved to strike "all his testimony pertaining to hypertrophic arthritis and aggravation thereof." Much, if not all, of that evidence was properly received. Even if some of it had been subject to objection a catchall motion of this nature would not reach the error without specification of the particular testimony regarded as inadmissible. McNicholas v. Continental Baking Co., Mo. App., 112 S.W.2d 849, loc. cit. 856.
The cases of Baumhoer v. McLaughlin, Mo.App., 205 S.W.2d 274, which holds that it is error for a doctor to base his opinion on a written report of another doctor which report was not in evidence at the time, and Hayes v. Equitable Life Assur. Soc., 235 Mo.App. 1261, 150 S.W.2d 1113, holding that a doctor's opinion concerning the date disability commenced, based upon his examination of a hospital record not in evidence is improper, while undoubtedly the law, have no application to the facts in the case at bar, as claimed by defendant, and this assignment of error is overruled.
Defendant next suggests error in the refusal of the trial court to sustain defendant's motion to strike the testimony of Dr. Sheets pertaining to the continued aggravation or permanency of plaintiff's arthritis. Dr. Sheets testified that the looked at an X ray picture of plaintiff's back which showed evidence of arthritis; that the effect of being thrown violently to the floor of a bus would be to aggravate the arthritic condition; that this would be painful; that the injury would increase the pain of the arthritis; that plaintiff would require treatment in the future for her condition if the pain was severe enough; that the arthritic condition would "stay there more or less as long as she lived" and that the aggravation "could be a continuing thing with this arthritic condition she has, it might be and it might not be."
Defendant seeks to apply to this evidence the rule in Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, 647, that "Where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting, one version thereof tending to prove the issue, the other tending to disprove it, with no explanation of the contradiction, and no other fact or circumstance in the case tending to show which version of the evidence is true, no case is made, and the jury should not be permitted to speculate or guess which statement of the witness should be accepted." In that case a doctor testified to two wholly inconsistent facts. First he testified that an X ray taken on the day of the accident revealed a condition of pleurisy. Thereafter he testified that pleurisy was not present on the day of the accident, but that it developed some time later. There was no other testimony to show when the pleurisy developed. That rule does not apply to the case at bar. Dr. Sheets did not testify to wholly inconsistent facts. He did not at first say plaintiff's arthritis was permanently aggravated and thereafter say that he did not know whether it was permanently aggravated. He at no time said there was permanent aggravation of the arthritic condition. He said that a violent fall would *789 aggravate the arthritic condition and increase the pain thereof, but nowhere in his testimony did he speculate on the duration or permanence of the aggravation. There was other evidence of permanent aggravation. Dr. Pernoud testified that she would have difficulty in the future from activation or aggravation of the osteoarthritic condition as a result of an accident such as plaintiff suffered.
Dr. Sheets merely expressed an opinion one opinionand there was no occasion to strike out his testimony. Here again defendant's attorney moved to strike all of Dr. Sheets' testimony "pertaining to the continued aggravation or permanency or whatever," without pointing out the particular testimony at which the objection was directed. In such case, as we have seen, supra, the motion is unavailing.
Finally, it is contended that the verdict of $5,000 is excessive. Plaintiff suffered no broken bones, and no pecuniary loss. She was a housewife, not employed outside the home. Stating her injuries in that view of the evidence which tends most strongly to sustain the award, as it is our duty to consider them, Smith v. St. Louis Public Service Co., Mo.App., 235 S.W.2d 102, we find that after her fall plaintiff did not know anything until she "came to" on a transfer bus; that she had vomiting spells immediately after the accident; that aspirin and camphor were given her that night and home remedies applied to her back, head, arm, hand, left knee and ankle, all of which were "bothering her terribly"; that the next day Dr. Sheets visited her at her home, and found her bruised from the back of her head down to and including her buttocks; her left arm badly bruised, both shoulders, right arm and left hip bruised; left ankle sprained; neck stiff, and a hematoma on the back of her head the size of a hen egg. Every other day for three weeks she was seen by Dr. Sheets. During that time she stayed in bed suffering from pain in her head and back, sick spells, vomiting. Her treatment consisted of hot baths, massages, medicines, sedatives and rest. She was required to stay in bed at home for a month and a half and thereafter she made trips to Dr. Sheets' office until he discharged her some 10 months after the accident. She had the services of three other doctors. X rays disclosed no broken bones, but showed fragmentation of the bony spurs or spiculi which had developed in a previous arthritis of the spine. In addition to the testimony of Dr. Pernoud which we have reviewed, he testified that plaintiff sustained a concussion of the brain producing a tearing of the brain cells and brain fibres, and pin point hemorrhages, followed by scar tissue healing. He found present in the plaintiff the initial symptoms of unconsciousness, dizziness, nausea, vomiting, and later on, headaches, nervousness, nervous instability and insecurity. He found definite pain in the top back part of her neck and at the base of the skull, and he related her complaint of hot flashes and menopausal disturbance. He testified that she needed rest and heat treatments, preferably diathermy, and that she would have some pain, varying in character and intensity, throughout the remainder of her life. At the time of the trial, in March, 1950, plaintiff complained of pain in her back, legs and head; frequent spells of nausea; inability to sleep because of nervousness. While physically able to perform all of her household duties previous to the injury, plaintiff testified that all of the household chores, including the washing and ironing, are done by the menfolks and her daughter, except that she is able to do a little cooking with the help of her daughter.
Considering these facts and the applicable rules of law, namely, that while each case must stand upon its own facts, a reasonable uniformity as to amounts of verdicts and judgments must be maintained; that consideration should be given to economic conditions and the current purchasing power of the dollar at the time the verdict is rendered; that plaintiff is entitled to reasonable compensation; that there is no ground for appellate interference except where the injustice of the size of the verdict is manifest; that a verdict is excessive when it offends against all sense of right and shocks the judicial conscience; that the failure of the trial judge to set the verdict aside as excessive is significant, we *790 conclude that we should not interfere with this verdict. Schneider v. Silbergeld, Mo. App., 31 S.W.2d 267; Smith v. St. Louis Public Service Co., supra; O'Bauer v. Katz Drug Co., Mo.App., 49 S.W.2d 1065; Timmons v. Kurn, 231 Mo.App. 421, 100 S.W.2d 952.
The Commissioner recommends that the judgment of the trial court be affirmed.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the trial court is, accordingly, affirmed.
ANDERSON, P. J., and McCULLEN and BENNICK, JJ., concur.