Lawrence E. MARLER and Golda Marler,
His Wife, Appellants,

v.

Lone PINKSTON, Respondent.

No. 45053.

Supreme Court of Missouri.

Division No. 2.

Sept. 10, 1956.

Robert A. Cedarburg, Ste. Genevieve, for appellants.

Dearing & Richeson, Will B. Dearing, Hillsboro, for respondent.

STORCKMAN, Judge.

Plaintiffs, who are husband and wife, brought this action for damages for the alleged wrongful death of their minor son, William Dale Marler. The amount sued for was $15,000. Trial of the cause resulted in a verdict for the defendant and, after an unavailing motion for new trial, the plaintiffs appealed.

Shortly after 9:00 o'clock on the night of September 12, 1953, William Dale Marler and Stewart Franklin Rayfield, 19 and 14 years of age respectively, were riding as passengers in a 1946 Ford automobile owned and operated by Billy Ray McGrael, age 18. They were traveling east from Bonne Terre on Highway K in St. Francois County. For two or three miles they followed a dump truck which was being used by a group of youngsters having a "hay ride." However, the McGrael car, in which plaintiffs' son was riding, had passed and was about a mile beyond the hay ride party when the accident occurred that resulted in the Marler boy's death.

At this time the defendant, Lone Pinkston, age 67, was driving his 1937 Ford automobile west on the same highway. He and his wife were returning to their home in Bonne Terre from a visit to a married daughter. The road was blacktop 18 feet wide and at the place in question there were a number of curves and hills. There was evidence that McGrael was driving his car 45 to 50 miles per hour and that the defendant had been driving at a speed of 30 to 35 miles per hour, but that he slowed to about 20 miles per hour when he saw the lights of the other car.

As the two cars were passing, the left front fender of defendant's automobile and the left rear fender of the McGrael car made some contact. The impact was comparatively slight and not disabling to either car, but the McGrael car went out of control over a hill and around a curve. It ran along a ditch on the south side of the highway for about 115 feet, then went back onto the blacktop pavement and diagonally across for a distance of about 84 feet and came to rest in a ravine about 80 feet from the north edge of the pavement. The plaintiffs' son received injuries which caused his death on the following day.

After the cars struck, defendant stopped and examined the fender which had been hit. He looked around for the other car and, not seeing it, he assumed it had not stopped and continued on his way home. The next day when he learned what had happened to the other car defendant went to the State Highway Patrol and reported that his car had been involved.

Plaintiffs submitted their case on defendant's alleged failure to keep his automobile as near the right-hand side of the highway as was practicable and in driving across the center line. Defendant denied this and contended the negligence of Billy McGrael was the sole cause of the fatal accident. The jury found for the defendant.

█ Plaintiffs' complaint on appeal relates solely to two passages in defendant's argument to the jury which are claimed to be prejudicially erroneous. The law is well settled that the trial court should be allowed a large discretion in permitting and restraining argument to the jury, and its rulings will generally be deferred to on appeal because of its better position to know the meaning, construction and effect of such argument. Collins v. Cowger, Mo., 283 S.W.2d 554, 561 [8]; Burow v. Red Line Service, Inc., 343 Mo. 605, 122 S.W. 2d 919, 921 [5]. The trial court hears the argument of counsel and has the opportunity to observe the way in which it is delivered and the manner in which it is re-

ceived by the jurors. The trial court considers and rules upon the argument when it is made and on motion for new trial has the opportunity to correct any error in its ruling. It has broad power with respect to granting a new trial.

■■ The basis of the first complaint of error is as follows:

"Mr. Swink: * * * Mr. and Mrs. Pinkston have had that car, driven that car a number of years, and they have taken very good care of it through these years. Here are several views of what is left of that hotrod, dechromed, leaded, tiptop shape, good mechanics, new tires, good brakes. Now, comparing those two cars for a moment, leaving that in the background of your mind, compare the drivers; young McGrael, nice-appearing young fellow, nice-appearing young fellow, but out skylarking around, nowhere in particular to go, but he is in his hot rod on the—

"Mr. McIlrath: I want to object to this, because there is no testimony to that. I think it is highly prejudicial. Ask that the jury be told to disregard it.

"The Court: Sustained as to the hot rod."

The plaintiffs' allegation of error is: "The Court's failure and refusal to instruct the jury to disregard the statement made by counsel for Defendant in his argument when referring to the automobile in which decedent was riding, as a 'hot-rod,' under the circumstances was prejudicially erroneous and requires a new trial."

The American Thesaurus of Slang, Berrey & Van den Bark, defines a "hot rod" as "a car whose action has been intensified by special equipment and the removal of excess body parts." A "lead job" is "a car, not necessarily a hot rod, with the ornamentation removed and surface body openings leaded in." Pyles' Words and Ways of American English, p. 179, lists "hot rod" as one of the new words added to our vocabulary since 1945.

The evidence shows that lines had been painted on McGrael's car and the parking lights had been painted white. McGrael testified that he and his friends were "messing around the car, taking chrome off and leading it in. You can see it on the picture." The pictures in evidence also show the hub caps had been removed from the automobile's wheels. McGrael further testified his car was in good mechanical condition, had good brakes and four new tires. The three boys in his car had nothing to do that evening and so they had followed the hay ride for two or three miles "waving and hollering." At the time of the accident they were driving 45 to 50 miles per hour.

In this state of the evidence it was not wholly extraneous to refer to McGrael's automobile as a "hot rod," as that term is currently understood. Nevertheless, plaintiffs' objection requesting "that the jury be told to disregard it" was sustained. The court's ruling "Sustained as to the hot rod" leaves no doubt that prejudicial error did not result. Sustaining the objection in this manner was no doubt intended to include the direction to the jury to disregard the objectionable statement, and the jury probably so understood the ruling. Also the ruling apparently satisfied counsel, since no further relief was asked, and we cannot say that the trial court abused its discretion in not taking further action when not then requested to do so. Redick v. M. B. Thomas Auto Sales, 364 Mo. 1174, 273 S.W.2d 228, 238 [17]; Williams v. Thompson, Mo., 251 S.W.2d 89, 94 [9].

■ Plaintiffs' counsel requests that we "take judicial notice of the fact that at the time of this trial and the argument of this case" certain persons had achieved notoriety which caused "the minds of people all over the country" to be "prejudiced

against hot rods and their drivers" so that any reckless driver is generally referred to as a hot rod. This we cannot do. The subject matter is not a fact or class of facts which judges and jurors may properly take and act upon without proof because they already know them. Wolf v. Mallinckrodt Chemical Works, 336 Mo. 746, 81 S.W.2d 323, 332 [3]. Furthermore, there is no showing in the evidence or in connection with the motion for new trial that the notoriety and state of the public mind alleged actually existed. We note also that the term "hot rod" was used to describe the automobile and not the driver. We must rule the point against the appellants.

The plaintiffs' other contention is that the ruling of the trial court was erroneous with respect to this portion of defendant's argument:

> "Mr. Swink: * * * Those boys came down there at a terrific rate of speed, and it is fortunate and these two that survived should thank their God every living moment of their lives that they are not only alive and they are hale and hearty and able to be up and around. To me it is a miracle that all three of them were not killed, but by the same token, instead of Mr. Pinkston being here in court, his good wife with him, defending his property rights, he ought to be given some recognition for being an honest, upright, honorable citizen—

> "Mr. McIlrath: If the Court please, I want to object to that. That is not part of the testimony in this case, and it is certainly bias and prejudicial.

> "The Court: Overruled."

■■ Allegations of error with respect to the argument of counsel must be presented to the trial court in a motion for new trial in order to be preserved for appellate review. Section 512.160, subd. 1 RSMo 1949, V.A.M.S.; 42 V.A.M.S. Supreme Court Rules, rule 3.23; Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W.2d 295, 303 [16]. Plaintiffs' motion for new trial contains only one specification of error with respect to argument, and that is the one we have considered. Since the point the plaintiffs now urge was not presented to the trial court in the motion for new trial, it has not been properly preserved for review by this court.

■ However, the passage quoted indicates that defendant's counsel was intending a reference to defendant's reporting his connection with the matter to the State Highway Patrol. This fact was in evidence and it does not appear that error could be predicated on the trial court's ruling. See Griffith v. Gardner, 358 Mo. 859, 217 S.W.2d 519, 530–531; Crews v. Kansas City Public Service Co., 341 Mo. 1090, 111 S.W.2d 54, 62.

We have read and considered Calloway v. Fogel, 358 Mo. 47, 213 S.W.2d 405, and the other authorities cited by plaintiffs and find them not controlling on the facts of the instant case. The transgressions, if any, in the case at bar are comparatively mild and do not constitute the sort of baseless disputation or inflammatory appeals to prejudice that would justify our interfering with the trial court's determination.

It follows that the judgment should be affirmed and it is so ordered.

All concur.