Grace CRITCHER, Appellant,

v.

RUDY FICK, Inc., Respondent.

No. 46095.

Supreme Court of Missouri,

Division No. 2.

July 14, 1958.

William C. Partin, Filbert Munoz, Charlotte P. Thayer, Kansas City, for appellant.

Robert G. Oberlander, Kuraner, Freeman, Kuraner & Oberlander, Walter A. Raymond, Kansas City, for respondent.

STOCKARD, Commissioner.

In plaintiff's suit against Rudy Fick, Inc., for actual and punitive damages for selling her a used car when representing it to be a new car the jury returned a verdict for defendant and plaintiff has appealed. The prayer seeks damages totaling more than $7,500. The parties will be referred to as in the trial court.

On November 14, 1952, plaintiff purchased from defendant a 1952 Ford automobile which had been driven approximately 12,000 miles. Her evidence was to the effect that defendant's salesman represented it to her as a new automobile and that she intended to buy and thought she was buying a new automobile. Defendant's evidence was to the effect that plaintiff negotiated for and knowingly purchased a used automobile. The "base price" of the automobile was $1,652.98. Additional charges were made as follows: Transportation, $85; preparation and conditioning, $15; Federal excise tax, $141; standard equipment, $27.33; accessories, $253.93. Defendant admits that it obtained the automobile from a car rental agency and that before it sold the car to plaintiff it changed the speedometer to register "zero miles." The price was substantially what would have been charged for the same automobile if new, and defendant admits that the charges made for federal excise tax and for transportation costs were not proper, but it contends that although these charges were erroneous they were innocently made by a girl "car-biller." Some if not most of the accessories for which additional charges were made were not installed on the automobile by defendant but were on the car when it was acquired from the rental agency. Subsequent to the sale plaintiff as given certain "papers" which included an "Authorized Ford Dealer's Service Policy and Warranty" and a "Battery Warranty and Adjustment Certificate," both of which described the automobile as "new." These "papers" also included the mortgage and title which described the automobile as "used." Defendant contended that these "papers" were delivered to plaintiff three or four days after the sale, but plaintiff contended that she did not actually receive them for several months.

On this appeal plaintiff asserts that reversible error resulted because of improper argument of defendant's counsel. We shall set forth sufficient parts of the oral argument to show those portions to which objection is now made.

After a few opening remarks, counsel for defendant stated that " * * * the day I can't believe that twelve men can come in here and decide a fixed-up, cooked-up, and half-baked case like this, that is the day I am going to turn in my license and stop practicing law. I couldn't live with myself." Defense counsel then proceeded to classify plaintiff's testimony into what he termed "lies," and in commenting on the fact that plaintiff did not call as a witness H. O. Smith, the former employee of defendant who sold the automobile to her, but who was called by defendant and who did testify, stated: "H. O. Smith, she wants to crucify him. Grace [plaintiff] was down to see him, Mr. H. O. Smith, and Partin [one of plaintiff's counsel] was down to see him, and if Partin had wanted you to know the truth he would have brought him in. But it looks to me like he couldn't get H. O. Smith to go along with this frame-up, and it looks like Grace went down alone to talk to Mr. H. O. Smith, and she said she did. So they left him alone. They couldn't get him to spring for them." The argument then continued as follows: " * * * She wants to say that they [defendant] cheated. Is it consistent with cheating to put a chattel mortgage that says 'used,' an invoice that says 'used,' a title that shows obviously that it is a used car, in the same envelope with their new car warranty and the battery warranty? Is that consistent with cheating? Could we be trying to lead

somebody into believing that this was a new car and put them in the same envelope before Christmas '52? I went all through night law school with this fellow (indicating) and that one (indicating), and that one (indicating) is blushing.

"Mr. Munoz: [plaintiff's counsel] If your Honor please, I resent that remark. I don't believe that I am blushing. And I want to know if you are actually accusing us of falsifying the issues in this case?

"Mr. Oberlander: These fellows are smart and clever. I know. I went to law school with them. They wait until January of '55, better than two years after, when this lawsuit commenced. All of the mishmush about new or used until '55, because salesmen roam around. You heard them here. They go from one place to another. Maybe we can't find them. She drives the car thousands of miles in the meantime, and she has since discovered this big, fat fraud that they are talking about, and they don't get around to filing suit until '55. Then he takes the legal steps to get this invoice, and he looks on here, and, lo and behold, transportation charge, excise tax, and he says, 'Looky here, Fil [one of plaintiff's counsel], looky here boys—.' "

"Mr. Munoz: I am going to object to that. There is no evidence that he said anything like that, and I ask that the court instruct the jury to disregard it.

"The Court: I think you asked for it a minute ago, but if you object to it, I will instruct the jury to disregard it. Stay within the record. [A thorough search of the record discloses nothing to warrant the comment that plaintiff's counsel "asked for it."]

"Mr. Oberlander: All right. I will stay within the record. And I know that they know, sure, this is some girl car-biller's mistake, or maybe they did jack the price so that they could get it financed. Sure, it says here 'used.' That is tough. It says 'used' all over them. But, looky here, here is a bartender on one hand and a corporation on the other hand, and we are going to rub the noses in a corporation. We get a jury in here, and where is their sympathy going to be? They will be looking for an excuse to rap Rudy Fick.

"Mr. Munoz: If your Honor please, I am objecting to that. All of this is to prejudice the jury, not only against the plaintiff, but the attorneys—trying to steal money away from the defendant. He made it before during the course of the argument of the case, and I strongly resent any personal attack upon me by this man. I used to think he was a lawyer of integrity, but I don't any more.

"The Court: Please stay within the record, and please proceed.

"Mr. Oberlander: I thought you wanted a fight in this case.

"Mr. Munoz: I want to fight upon the issues in the case and not upon any innuendo.

"Mr. Oberlander: Have you got a bartender on one side, and have you got a corporation on the other side, and have you got—did you go out of your way to let this jury know that there is a net worth here of $266,000.00? And didn't you tell this jury right now about this big corporation?

"Mr. Munoz: Your Honor knows that, and Mr. Oberlander knows, and the jury should know, that we are entitled to protect our client to the best of our ability, and the law provides that if there is fraud that we are entitled to show the net worth of our defendant, and the law provides that if we show fraud, that we are entitled to punitive damages, and if we prove our case, the jury is free to render a verdict on any amount that they want on punitive damages, and simply because we are trying to protect our clients. I have never in the eight years that I have practiced law—and he hasn't been practicing law any longer—heard any lawyer, with inexperience or with experience, make such a personal, bitter attack against another lawyer.

"The Court: Proceed.

"Mr. Oberlander: Well, as I was saying before I was so rudely interrupted, they must be aware of the fact that they have a bartender on the one side and a corporation on the other. I think that is in the record. But I don't believe you are going to be governed by sympathy. They would like for you to be. What does it look like to you, when every witness who came into this court room said she got these papers before March 26, 1953, and she says after that, and for a very good reason. Now what does that look like to you? He wants to know if I am attacking their honesty and integrity, and my answer is, 'yes, I am.' He is attacking mine. But he hasn't got anything to talk about.

\*    \*    \*    \*    \*    \*

"Do you remember Melvin Friedman and Claude Hartman, their witnesses? They were brought in here to say one thing—and told to say that the difference between a '52 Ford with twelve thousand miles and a '52 Ford stinking new, was $250.00 at that time. That is all they have been told to say. Partin didn't have them ready on anything but seventeen-fifty for twelve thousand miles. So on cross-examination, I got the truth. [There then followed an argument totally unrelated to what the witnesses said concerning the difference in value of a new and used Ford, but it pertained to answers given by Friedman and Hartman on cross-examination as to how they would show a car sold by them was used and not new.]

\*    \*    \*    \*    \*    \*

"Partin brought this kid in here from Ficks, and the ream of invoices, to prove that they sold this Ford at the new Ford price. That sharp. The jury would think it new and forget that awful word 'used' in all of these papers. 'Maybe we can get that out of their minds.'

\*    \*    \*    \*    \*    \*

"Now, why do you suppose integrity, honesty? Why do you suppose he got this telephone man in here? I will tell you why. Big corporation, sympathy, prejudice. Anything, but for God's sake, take that jury's mind off of her lies and the word 'used.' Make them forget what Oberlander got her witnesses to say. Keep saying 'punitive.' Keep saying 'poor woman.' [In the opening argument plaintiff's counsel used the word "punitive" only one time and he referred to plaintiff only as "Mrs. Critcher" and never as "poor woman".] Just make that jury forget the facts. All I want you to do is this: You tell this woman and tell these lawyers, who are so outraged, that the day is not yet here when a 12-man, common law jury can be hoodwinked into giving a verdict for a worthless, no-good, half-baked, framed-up case.

"Mr. Munoz: I renew my objection to that.

"Mr. Oberlander: I figured that you would.

"Mr. Munoz: I ask that the court dismiss the jury.

"The Court: The Court refuses to dismiss the jury. The objections will be overruled.

"Mr. Oberlander: What do you want to get rid of this jury for? You show these lawyers and this woman that the day has not yet come just when somebody is making money that somebody can come in with a preposterous story and hoodwink a jury on the basis of prejudice and sympathy alone."

█ The argument of defendant's counsel presents a studied effort to convey to the jury the idea that plaintiff and her counsel had conspired to present a "fixed-up" and "framed-up" case, that is, one based on untrue and perjured testimony, and that plaintiff and her counsel had improperly seized upon an opportunity to sue a corporation and present her "framed-up" case because a jury would normally be prejudiced against a corporation. An express and direct charge was made that

counsel for plaintiff had attempted to obtain perjured testimony and that they were dishonest and lacking in integrity. From a careful study of the record we conclude that these accusations and denunciations were not based on any evidence or on any legitimate inference from the evidence, and they were not a legitimate reply to argument by opposing counsel. Therefore, the statements went beyond and outside the scope of legitimate argument, they included objectionable personalities and offended against the dignity of the trial court, and they could have been made with no purpose but to arouse and inflame the jury with a feeling of hostility toward and prejudice against plaintiff and her counsel.

■■■ "Due administration of justice demands that the jury in passing on * * * grave questions should not be allowed to have injected in a case, either by evidence, remarks of counsel, or even by the conduct of the judge, any extrinsic matter that tends to create bias or prejudice." O'Hara v. Lamb Const. Co., Mo.App., 197 S.W. 163, 165. It is a basic concept of our judicial system that "One of the first duties of the judge of a trial court is to preserve order and require that the attorneys as well as other persons should, by their behavior, show a decent respect for the court and for the opposing counsel." Tuck v. Springfield Traction Co., 140 Mo.App. 335, 124 S.W. 1079, 1081; Hancock v. Crouch, Mo.App., 267 S.W.2d 36, 44. As frequently stated, "Trials before juries ought to be conducted with dignity and in such manner as to bring about a verdict based solely on the law and the facts. Hence reckless assertions unwarranted by the proof and intended to arouse hatred or prejudice against a litigant or the witnesses are condemned as tending to cause a miscarriage of justice." Calloway v. Fogel, 358 Mo. 47, 213 S.W.2d 405, 409 [4]; Dodd v. Missouri-Kansas-Texas R. Co., 353 Mo. 799, 184 S.W.2d 454 [6]; Schwinegruber v. St. Louis Public Service Co., Mo.App., 241 S.W.2d 782 [7]. Conduct of counsel in using language in oral argument no more drastic than that appearing here has been properly characterized by the courts as "reprehensible in the highest degree," Tuck v. Springfield Traction Co., supra; "ugly and serious," Jackman v. St. Louis & H. Ry. Co., Mo. App., 206 S.W. 244, 246; and as "highly reprehensible" and "reprehensible and inexcusable," Missouri-K.-T. R. Co. of Texas v. Ridgway, 8 Cir., 191 F.2d 363, 29 A.L.R. 2d 984. It is a matter of commendation for the bar generally that the number of cases is relatively few in which there have been unwarranted charges by counsel of misconduct on the part of opposing counsel, but where it has occurred the courts have been quick to condemn it in appropriate language. Tuck v. Springfield Traction Co., supra; Missouri-K.-T. R. Co. of Texas v. Ridgway, supra; Jones v. Macedonia-Northfield Banking Co., 132 Ohio St. 341, 7 N.E.2d 544; Taylor v. F. W. Woolworth Co., 151 Kan. 233, 98 P.2d 114; Hulburd v. Worthington, 57 Cal.App.2d 477, 134 P.2d 832; Annotations 78 A.L.R. 766 and 29 A.L.R.2d 996.

■ There is substantial authority that under such circumstances the trial court has a duty to restrain counsel "firmly and unflinchingly," Eagle, Star & British Dominions Ins. Co. v. Heller, 149 Va. 82, 140 S.E. 314, 57 A.L.R. 490, and "to require counsel to proceed in an orderly and lawyer-like manner" even though no objection is made. Jones v. Macedonia-Northfield Banking Co., supra [132 Ohio St. 341, 7 N.E.2d 549]. See also Belfield v. Coop., 8 Ill.2d 293, 134 N.E.2d 249; Aetna Life Ins. Co. of Hartford, Conn. v. Kelley, 8 Cir., 70 F.2d 589, 93 A.L.R. 471.

■■ Plaintiff admits that as to some of the argument now claimed to be erroneous and prejudicial no proper and timely objection was made, but it is requested that we invoke 42 V.A.M.S. Supreme Court Rule 3.27 which provides that "Plain errors affecting substantial rights may be considered * * * on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or

defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom." This rule has twice been applied by this court to improper argument of counsel when insufficient or no objection was made at the time. Calloway v. Fogel, 358 Mo. 47, 213 S.W.2d 405; Leaman **v.** Campbell 66 Express Truck Lines, Inc., 355 Mo. 939, 199 S.W.2d 359. However, even though there may be a duty on the trial court to take necessary corrective action without objection being made when argument goes to the extreme, as in this case, it is the general rule that the prejudicial effect of such improper argument will be considered to be waived if proper and timely objection is not made to the trial court so that it may, if the misconduct is of the nature to be subject to corrective action, take appropriate steps under the circumstances to remove the prejudicial effect. Enyart v. Santa Fe Trail Transp. Co., Mo.Sup., 241 S.W.2d 268 [4]; Blanford v. St. Louis Public Service Co., Mo. Sup., 266 S.W.2d 718 [3]; Clark v. Mc-Keone, Mo.Sup., 234 S.W.2d 574 [1]. It is not necessary on this appeal to determine if the argument would justify this court to invoke Supreme Court Rule 3.27 because plaintiff's counsel did make proper and timely objection to at least one phase of the argument that was improper and prejudicial. However, it is appropriate in the situation here presented again to admonish counsel that Supreme Court Rule 3.27 is not to be a refuge for those who negligently fail to make proper objections or who fail to make objections because the trial situation may be considered " 'difficult to deal with by objections.'" Peterson v. Kansas City Public Service Co., Mo.Sup., 259 S.W.2d 789, 791; Hancock v. Crouch, Mo. App., 267 S.W.2d 36, 45–46.

■ For some unexplained and certainly inexcusable reason if plaintiff desired to preserve the alleged error for review, plaintiff's counsel failed to object to several statements in the argument of defendant's counsel now contended to be improper. But he did make it known to the trial court that he disapproved of the personal attacks made against him and the accusations and insinuations that he had been instrumental in presenting or attempting to present false testimony. Near the end of the argument, defendant's counsel, by referring to plaintiff's claim as "a worthless, no-good, half-baked, framed-up case," again charged both plaintiff and her counsel with knowingly presenting false and perjured testimony. No other meaning can be attributed to this language. Plaintiff's counsel immediately stated, "I renew my objection to that," and after the improper and somewhat impudent remark of defendant's counsel that "I figured that you would," plaintiff's counsel asked the trial court to dismiss the jury. The trial court not only denied the request to dismiss the jury but it also overruled the objection. Defendant's counsel then improperly retorted, "What do you want to get rid of this jury for?" It is true that plaintiff's counsel, in making the objection, did not state the reason therefor, and such a general objection ordinarily is insufficient to present anything for review. Hoffman v. St. Louis Public Service Co., Mo.Sup., 255 S.W.2d 736 [7]; Hancock v. Crouch, Mo.App., 267 S.W.2d 36 [17]. However, the argument to which the objection unquestionably was directed was highly improper, and obviously so, and the ground or reason for the objection was self-evident. Under such circumstances the objection was "sufficient to call for action by the court, though the objection may be said to be general." Dodd v. Missouri-Kansas-Texas R. Co., 353 Mo. 799, 184 S.W.2d 454, 458 [10].

■ Defendant contends that the remark of plaintiff's counsel that "I used to think that he [defendant's counsel] was a lawyer of integrity, but I don't any more" opened up the field of personal abuse, and anything he said was proper in reply thereto. The comment obviously was improper, but a reference to the portions of the argument above set out readily shows that this was not the opening wedge in this highly

improper field, and defendant's counsel cannot now on that basis justify his remarks to which objection was made.

◼ Defendant also contends that since plaintiff asked for no relief other than discharge of the jury the only question on this appeal is whether the misconduct was so bad that we are required to convict the trial judge of an abuse of discretion in failing to take the requested action. However, in making this contention defendant ignores the fact that the trial court not only refused to discharge the jury but it also expressly overruled the objection and thereby approved the comments. It obviously would have been futile, and therefore unnecessary, to request the trial court to reprimand counsel for making an argument or to instruct the jury to disregard an argument which the court had already expressly sanctioned. Villinger v. Nighthawk Freight Service, Inc., Mo.App., 104 S.W.2d 740 [5].

Since there may be another trial we shall notice briefly certain other contentions of plaintiff. She contends that the trial court erred in admitting evidence pertaining to certain price stabilization or credit regulations. This is based on the contention that the evidence was admitted on the assurance of defendant's counsel that "I will tie it in later" and that he did not do so. This situation may and should be handled properly in the event of a new trial.

◼ Plaintiff also contends that the trial court erred in permitting defendant's general manager to testify that under certain conditions, when selling a used automobile, defendant would give a service policy and a battery warranty when by its answers to interrogatories it had stated that it had no "custom or practice" to do so. Answers to interrogatories are not pleadings, and while in some circumstances the answers should have a limiting effect on the scope of proof at the trial, the trial court should be given a wide discretion

to prevent the party propounding the interrogatories from being misled and prejudiced and to protect the answering party against his own mistake or inadvertence. Fitzpatrick v. St. Louis-San Francisco Railway Company, Mo.Sup., 300 S.W.2d 490, 500 [14]. It has not been ruled that in no event can a party offer testimony contrary to the answers given to interrogatories, and plaintiff has not demonstrated that she was prejudiced by the admission of the testimony in this case. Under the precise facts and circumstances presented on this appeal the admission of the testimony was not error.

◼ Plaintiff next contends that the trial court erred in refusing to permit two of her witnesses to testify that subsequent to the time she purchased the automobile she told them that she had purchased a new automobile. Plaintiff contends that an essential part of her case was the intent on her part to buy a new car, and that these subsequently made declarations were admissible as evidence of her intent at the time of the purchase. It appears that in some few instances subsequently made statements not a part of the res gestae may be relevant circumstantial evidence of intention or a state of mind, Mattan v. Hoover Co., 350 Mo. 506, 166 S.W.2d 557, but here the statements, as distinguished from those in the Mattan case, were self-serving, and were properly excluded. Weller v. Weaver, 231 Mo.App. 400, 100 S.W.2d 594 [10]; 31 C.J.S. Evidence § 216.

The last contention of plaintiff is that the court erred in giving an instruction on the credibility of witnesses containing this statement: "If, upon a consideration of all the evidence, you believe that any witness has wilfully sworn falsely to any material fact in issue, you are at liberty to disregard the whole or any part of such witness' testimony." Plaintiff's contention is directed solely to the use of the word "disregard" which has frequently been criticized. See Duffy v. Rohan, Mo.Sup., 259 S.W.2d 839 [9] and the cases there

cited. In the event of a new trial, and if a credibility instruction is warranted and is requested, the defendant may, if so inclined, heed the criticism made in the Duffy case.

Because of the prejudicially erroneous argument previously referred to, the judgment is reversed and the cause remanded.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.